**EPISCOPAL HOSPITAL, et al., Appellants,**

v.

**Donna E. SHALALA, Secretary, Health and Human Services.**

**Nos. 92–5033, 92–5034.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 18, 1993.

Decided June 18, 1993.

---

Mark H. Gallant, Philadelphia, PA, argued the cause for appellants.

Linda A. Ruiz, Atty., Dept. of Health and Human Services, Washington, DC, argued the cause for appellee. With her on the briefs were Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John D. Bates, Asst. U.S. Atty. R. Craig Lawrence, Asst. U.S. Atty., Washington, DC, also entered an appearance for appellee.

Before EDWARDS, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This is an appeal from a District Court judgment upholding the validity of regulations issued by the Secretary of Health and Human Services (the "Secretary") under 42 U.S.C. § 1395ww(d) (1988), which sets forth the methodology for calculating hospitals' Medicare cost reimbursement under the Prospective Payment System ("PPS"). Appellants argue that the Secretary's PPS regulations are based in part on an erroneous interpretation of the enabling statute, or are arbitrary and capricious. The District Court disagreed; we reach the same result and therefore affirm the District Court's judgment.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

Part A of the Medicare Program, 42 U.S.C. § 1395c et seq. (1988 & 1991 Supp. III), authorizes payment for primary institutional care, such as hospital services, to eligible aged and disabled persons. Providers of these services are reimbursed by fiscal intermediaries designated by the provider and the Secretary. 42 U.S.C. § 1395h (1988); 42 C.F.R. § 421.103 (1992). Under Part A, Medicare beneficiaries receive coverage for 90 days of hospital inpatient services in each benefit period, as defined by the statute and regulations, plus an additional 60–day lifetime reserve. 42 U.S.C. § 1395d (1991 Supp. III); 42 U.S.C. § 1395q (1988); 42 C.F.R. § 409.60 et seq. (1992).

Until October of 1983, the Medicare Program reimbursed hospitals and other health care providers for the "reasonable cost" of covered services, defined as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v) (1988). Under this reasonable-cost regime, hospitals providing inpa-

tient care to Medicare patients received reimbursement for allowable operating costs of services provided to patients, but only to the extent the services were provided on days for which the patients had Medicare coverage. *Id.* § 1395q(d).

Concerned that hospitals had little incentive to reduce or contain costs because reasonable cost reimbursement shifts the burden of cost increases from hospitals to the federal government, Congress enacted provisions in the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324 (1982) (codified at scattered sections of 42 U.S.C.), to address containment of Medicare costs. While the TEFRA provisions left the basic retrospective, cost-based structure of Part A reimbursement undisturbed, it imposed a limit on the rate of increase of Part A reimbursement.

Under TEFRA, the rate-of-increase limit for each hospital was tied to a "target amount." This amount was the hospital's allowable costs of inpatient hospital services for the preceding cost reporting period, increased by a specified percentage in each succeeding cost reporting period. 42 U.S.C. § 1395ww(b)(3)(A) (1988). Though hospitals were subject to reductions in the amount of their Part A reimbursements if their operating costs exceeded the applicable target amounts, *id.* § 1395ww(b)(1)(B), they received bonuses if their operating costs were less than their target amounts. *Id.* § 1395ww(b)(1)(A); 42 C.F.R. § 413.40 (1992).

TEFRA also set out specific exceptions and adjustments to the new limits. Section 1395ww(b)(4)(A) directed the Secretary to "provide for an exemption from, or an exception and adjustment to, the [rate of increase] method ... where events beyond the hospital's control or extraordinary circumstances ... create a distortion in the increase in costs for a cost reporting period." 42 U.S.C. § 1395ww(b)(4)(A). In addition, the subsection authorized the Secretary to "provide for such other exemptions from, and exceptions and adjustments to, such method as the Secretary deems appropriate." *Id.; see also* 42 C.F.R. § 413.40(f)-(g) (exemptions and adjustments).

In 1983, Congress replaced the TEFRA-mandated system with a more radical reform of inpatient cost reimbursement, known as the Prospective Payment System. *See* Pub.L. No. 99–272, § 9102, 100 Stat. 155 (1986) (codified as amended, 42 U.S.C. § 1395ww(d) (1988 & 1991 Supp. III)); 42 C.F.R. § 412.1 *et seq.* (1992). Under this system, hospitals and other health care providers are reimbursed on the basis of prospectively determined national and regional rates, rather than reasonable operating costs. The system classifies Medicare patients into one of approximately 470 "diagnosis related groups" ("DRGs") based on differences in patients' utilization of hospital resources by groups and establishes fixed rates for each. The PPS rates do not vary according to the actual costs of individual cases, but are designed to allow efficient providers to recover their average costs of serving Medicare patients during a cost reporting period.

In enacting the PPS, Congress simultaneously provided for various exceptions and adjustments, as it had when it enacted TEFRA's rate-of-increase limit. Section 1395ww(d)(5) directs the Secretary to implement specific exceptions and adjustments, 42 U.S.C. § 1395ww(d)(5)(A)–(H), and to provide by regulation for other exceptions and adjustments to payment amounts "as the Secretary deems appropriate." *Id.* § 1395ww(d)(5)(I). In contrast to the analogous provision in TEFRA, however, § 1395ww(d)(5)(I) does not direct the Secretary to adjust reimbursement amounts where "extraordinary circumstances" distort the increase in costs for a particular cost reporting period.

Though eager to restrain health care costs, Congress recognized that immediate institution of the PPS could pose financial hardship for many health care providers. It therefore created a four-year transition period between the reasonable cost system and the PPS, 42 U.S.C. § 1395ww(d), designed to "minimize disruptions that might otherwise occur because of a sudden change in reimbursement policy." H.R.REP. No. 25, 136, 98th Cong., 1st Sess., *reprinted in* 1983 U.S.C.C.A.N. 143, 355.

During the transition period, the government was required to reimburse hospitals for inpatient hospital services according to a "blended" rate, based upon two components. The first was the hospital-specific portion ("HSP"), defined as a hospital's "allowable operating costs of inpatient hospital services" in a prior base year, *i.e.*, the Medicare cost year ending on or after September 30, 1982. 42 U.S.C. § 1395ww(b)(3)(A). The HSP is a percentage of the hospital's target amount as defined in subsection (b)(3)(A). The second element was the "federal" portion, a computation from regional and national DRG rates approaching the PPS rate. 42 U.S.C. § 1395ww(d)(2)(A), (B). Over the course of the four-year transition period, the portion of the reimbursement amount attributable to the prospective rate became progressively larger and HSP progressively smaller, until the prospective rate formed the exclusive basis for PPS reimbursement at the end of the transition period. *Id.* § 1395ww(d)(1)(C).

In implementing the PPS, the Secretary promulgated regulations modifying prior Medicare coverage rules. *See* 48 Fed.Reg. 39,752 (1984) (codified at 42 C.F.R. § 405 *et seq.* (1992)). Inpatient hospital stays involving at least one day of Medicare eligibility would be treated as fully "covered" stays under Part A, for which the PPS payment itself would represent payment in full, regardless of the length of stay or extra costs attending the patient's recovery. 42 C.F.R. § 412.2(b)(2) (1992) (formerly 42 C.F.R. § 405.70(b)(2)(ii) (1984)). Because hospitals were prohibited from billing costs not fully reimbursed by Medicare, *id.* § 412.42(a), the "balance," in effect, was no longer reimbursable.

## B. *Facts*

Appellants in this case are seven short-term acute care hospitals providing inpatient care under the Medicare program. Through their fiscal year ending June 30, 1984, appellants received reimbursement under the reasonable cost system. During the transition years, their PPS rates, including the HSP, were calculated by their intermediaries before the start of their first year under the PPS and were annually updated and used to determine their PPS payments per discharge. Excluded from the base-year costs were costs associated with care furnished to Medicare beneficiaries for hospitalization after their Medicare coverage had been exhausted, costs for which Medicare had reimbursed the hospitals under the reasonable cost system. The hospitals sought an adjustment from their intermediaries to include these costs in the base-year totals, for purposes of calculating the HSP of their PPS rates. The intermediaries declined to adjust the costs because the Secretary's regulations did not provide for such an adjustment. The hospitals appealed to the Provider Reimbursement Review Board, which, on April 12, 1989, certified the issue for expedited judicial review pursuant to 42 U.S.C. § 1395*oo*(f) (1988).

The hospitals then filed the present action in the United States District Court on June 15, 1989, requesting an order compelling the Secretary to compensate them for costs that were improperly excluded from the hospital-specific portions of their transition-year payment rates. On cross-motions for summary judgment, the District Court reviewed the record and concluded that the Secretary had acted lawfully in not providing for adjustments to hospitals' base-year costs to reflect costs associated with care furnished to patients after their Medicare coverage had been exhausted. *Episcopal Hosp. v. Sullivan*, Medicare & Medicaid Guide, (CCH) ¶ 39,817, 1991 WL 330924 (D.D.C.1991). The court assumed, without discussion, that 42 U.S.C. § 1395ww(b)(4)(A), which authorizes the Secretary to make adjustments in "extraordinary circumstances," applies to transition rates under PPS. However, the court upheld as based on a permissible reading of the statute the Secretary's conclusion that promulgation of a new regulation treating exhausted stays differently than under reasonable cost reimbursement was not an event "beyond the hospital's control or extraordinary circumstances" within the meaning of § 1395ww(b)(4)(A). The court also concluded that the Secretary did not abuse her discretion under § 1395ww(d)(5)(D) to provide the adjustment the hospitals sought.

This appeal followed.

## II. DISCUSSION

Appellants argue in the first instance that the plain meaning of the enabling statute required the Secretary to make adjustments they seek. In the alternative, they argue that even if the statute does not require the Secretary to make the requested adjustments, the Secretary's refusal to make the base-year adjustments was arbitrary and capricious.

*Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), provides the proper framework for the statutory interpretation issue. That case held that

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... [However,] if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781.

Appellants rely on § 1395ww(b)(4)(A), which states that "[t]he Secretary shall provide for an exemption from, or an exemption and adjustment to, the [statutory rate of increase] method ... where events beyond the hospital's control or extraordinary circumstances ... create a distortion in the increase in costs for a cost reporting period." 42 U.S.C. § 1395ww(b)(4)(A). They note that § 1395ww(d)(1)(A)(i)(I) incorporates by reference the TEFRA "target rate" definition of subsection (b)(3), for purposes of setting the PPS base-period, hospital-specific costs. Subsection 1395ww(b)(3), they argue, is in turn subject to the provisions of subsection 1395ww(b)(4)(A), which requires the Secretary to make adjustments to the target rate in "extraordinary circumstances." *Id.* § 1395ww(b)(4)(A). Thus, appellants conclude that § 1395ww(d)(1) explicitly incorporates subsection (4)(A)'s extraordinary-circumstances mandate.

We do not agree. Section 1395ww(b)(3)(A), defining "target amount," plainly does *not* incorporate subsection (b)(4)(A). In fact, section 1395ww(b)(3)(A) never mentions that subsection, although it does refer to other exceptions from the target amount method determined under subparagraph (b)(3)(A). *See* 42 U.S.C. § 1395ww(b)(3)(A). Nor does subsection (b)(4)(A) either define "target amount" or modify the definition set forth in (b)(3)(A). In fact, subsection (b)(4)(A) explicitly authorizes the Secretary to depart from the "target amount" benchmark in (b)(3)(A) in specific circumstances, suggesting that incorporation of (b)(4)(A) might conflict with the congressional intent partially to base reimbursement on the target amount during the PPS transition period. Certainly, the fact that Congress clearly incorporated subsection (b)(3)(A), while never referring to subsection (b)(4)(A), suggests that when Congress intended to incorporate a TEFRA provision into PPS, it did so expressly and that it did not intend to incorporate the provision at issue here.

Furthermore, appellants are unable to reconcile their argument with § 1395ww(d)(5). That section mandates specific adjustments and exceptions to the amount a hospital may be reimbursed for its inpatient operating costs under the PPS, *see* § 1395ww(d)(5)(A)–(H), and gives the Secretary general authority to provide for other exceptions and adjustments "as the Secretary deems appropriate." *Id.* § 1395ww(d)(5)(I). The quoted language also appears in subsection (b)(4)(A); significantly, however, subsection (d)(5) contrasts with subsection (b)(4)(A), insofar as the former does not include a provision for upward modification of a hospital's target rate in "extraordinary circumstances." *Compare* 42 U.S.C. § 1395ww(d)(5)(I) *with id.* § 1395ww(b)(4)(A).

In light of the foregoing, not only are we unable to agree with appellants that the statute requires the Secretary to make the requested adjustments, but it appears that the meaning may be quite the contrary. Even if we admit the possibility of other interpretations, appellants still do not prevail. Under the second step of *Chevron*, we

"need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. at 2781 n. 11. We need only determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2781. In short, to the extent that the statute is ambiguous, the Secretary's interpretation, which is a permissible one for the reasons given above, must be upheld.

Having upheld the Secretary's reading of the statute under the *Chevron* analysis, we turn to appellants' second argument, that the Secretary's promulgation and application of the implementing regulations was arbitrary and capricious.

█ The appropriate standard for reviewing the Secretary's exercise of the discretion afforded under the statute is dictated by 42 U.S.C. § 1395oo(f)(1), which incorporates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) (1988). Under the APA, we hold unlawful and set aside only those agency actions that we find "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.* Insofar as the question of whether the Secretary's regulations are in accordance with law, it follows from our analysis above the Secretary acted consistently with the statutory mandate, and in furtherance of the congressional goals.

As to the argued arbitrariness or capriciousness of the form she chose for doing so, we have often made it plain that we do not sit to interfere with the policy decisions of an agency, *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir.) (en banc), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976) (noting that this Court is "forbidden from substituting [our] judgment for that of the agency"), and we will not do so here. A review of the Secretary's official explanation of the final rules, 49 Fed.Reg. 234, 246–49 (1984), reveals that the Secretary responded to the comments that were in fact submitted. She revealed her goals and reasoning. She gave us a record which "will enable us to see what major issues of policy were ventilated by the ... proceedings and why the agency reacted to them as it did." *Walter O. Boswell Mem. Hosp. v. Heckler,* 749 F.2d 788, 794 (D.C.Cir.1984) (internal quotation marks omitted). She did, in short, all that the APA required.

We note that the root cause of appellants' objection to the PPS implementing regulations lies not in the refusal of adjustments, but rather in 42 C.F.R. § 412.42(a), which prohibits hospitals from charging Medicare patients whose bills exceed the amount paid to the hospital under the PPS. That regulation reads as follows:

> A hospital may not charge a beneficiary for any services for which payment is made by Medicare, even if the hospital's cost of furnishing services to that beneficiary are greater than the amount the hospital is paid under the prospective payment systems.

*Id.* Obviously, this regulation may prevent health care providers from recouping losses which they may sustain when a Medicare patient remains with them beyond the average stay per ailment or requires greater than average care. There is, however, nothing we can do for appellants in this regard as they have not challenged § 412.42(a), but only the Secretary's discretionary refusal to adjust the base-year computations to offset the effect of the change in regulations. *See Association of Accredited Cosmetology Schools v. Alexander,* 979 F.2d 859, 862 (D.C.Cir.1992) (courts ordinarily do not address new legal theories on appeal).

### III. CONCLUSION

█ For the reasons set forth above, we hold that the plain language of the PPS statute and its implementing regulations support the Secretary's contention that the PPS does not include an "emergency circumstances" provision. Further, the Secretary's implementation of the statute was neither arbitrary, capricious, nor unlawful. Therefore, the judgment of the District Court is hereby

*Affirmed.*