**UNITED STATES of America, Plaintiff,**

v.

**Eugene F. RICCI, doing business as Pier International Customs Brokerage, Defendant.**

Slip Op. 97–145.
Court No. 95–09–01168.

United States Court of International Trade.

Oct. 28, 1997.

Frank W. Hunger, Assistant Attorney General of the U.S., David M. Cohen, Di-

rector, A. David Lafer, Senior Trial Counsel, Harold D. Lester, Jr., Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for Plaintiff; Colleen C. Piccone and Marjorie F. Cole, U.S. Customs Service, of Counsel.

Neville, Peterson & Williams, New York City, John M. Peterson and James A. Marino, of Counsel, for Defendant.

## OPINION

WALLACH, Judge.

The United States seeks to recover an unpaid penalty of $30,000 from Eugene F. Ricci[1] based on a Customs Service audit of Ricci's records that found 169 entries for which he had failed to file an entry summary and/or pay duties timely, and a pattern of paying between 20 and 45 days late.

On April 3, 1992, Customs transmitted a prepenalty notice to Ricci, to which he responded. Customs notified Ricci that his response had not established an adequate reason to cancel the penalty in a letter dated February 9, 1993. On October 11, 1994, Customs rejected Ricci's request for mitigation of the penalty, and in consideration of his asserted financial distress, offered an option of paying the penalty or voluntarily surrendering his license. Ricci declined to do either, and this action ensued.

Before the Court are Ricci's Motion to Dismiss paragraphs 5, 6[2], 7, 8, 9, 12 and a portion of 11 of the Complaint and the government's Motion for Summary Judgment. This action can be decided in full by the government's Motion for Summary Judgment, which relies on paragraph 6 of the Complaint. Therefore, the Court need not reach the merits of the Defendant's Motion to Dismiss.

## I. STANDARD OF REVIEW

This Court reviews a case brought under 19 U.S.C. § 1641(d)(2)(A) *de novo*. Section 1641 does not set out a standard of review for actions litigated under subsection 1641(d)(2)(A).[3] Rather, it is necessary to examine 28 U.S.C. § 2640 and the Administrative Procedure Act, 5 U.S.C. § 706, to determine the standard applicable here.

Section 2640 provides that the Court of International Trade makes its determinations in an action under section 1641(d)(2)(A) "upon the basis of the record made before the court...." 28 U.S.C. § 2640(a)(5). The scope of review thus set out is not accompanied by a standard of review. Therefore, the court refers to the Administrative Procedure Act, which gives general guidance regarding the scope and standard of review to be applied in various circumstances. *See Urbano v. United States*, 967 F.Supp. 1322, 1328 (CIT 1997); *Humane Society of the United States v. Brown*, 920 F.Supp. 178, 195 (CIT 1996). The statute states in pertinent part:

> The reviewing court shall ... (2) hold unlawful and set aside agency action, findings, and conclusions found to be ... (E) unsupported by substantial evidence in a case subject to subsections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court.

5 U.S.C. § 706(2)(E), (F). Because the instant action is reviewed on the record before the Court and not on the agency record, subsection 706(F) provides the standard of review.

1. Ricci did business as Pier International Customs Brokerage. His sole license, however, was as an individual customs broker, and not as a corporate broker. Therefore, Ricci is personally liable for any violations that occurred in his broker business.

2. In its response to Defendant's Motion for Summary Judgment, Ricci argued for the first time that paragraph 6 of the Complaint should be dismissed as well as the others, for lack of notice at the administrative level. The Court construes Ricci's argument as a counter-motion for sum-

mary judgment, and finds that it has no merit for the reasons stated in section II.C. of this opinion.

3. Had Customs commenced these proceedings under Title 19 subsection 1641(d)(2)(B), the Court would apply the standard of review set forth in subsection 1641(e)(3): "The findings of the Secretary as to the facts, if supported by substantial evidence, shall be .conclusive." Customs commenced the administrative proceedings under subsection 1641(d)(2)(A), however. Subsection 1641(e)(1) does not govern proceedings brought under subsection 1641(d)(2)(A).

■ Accordingly, this Court will review the evidence properly introduced before it *de novo* in rendering its decision. 5 U.S.C. § 706(2)(F). This *de novo* standard is not limited by the authorities, and thus applies to both the question of whether a penalty is warranted and the amount of the penalty. *See, United States v. Priority Products, Inc.,* 9 C.I.T. 383, 386, 615 F.Supp. 591, 593 (1985), *aff'd,* 4 Fed. Cir. (T) 88, 793 F.2d 296 (1986). The Court is directed to determine the amount of penalty, if any, independently of Customs' decision. *Id.*

Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CIT Rule 56(d). "Only disputes over facts that are material, that is, facts that might affect the outcome of the suit under governing law, will properly preclude the entry of summary judgment." *Bauerhin Technologies Ltd. v. United States,* 914 F.Supp. 554, 558 (C.I.T.1995), *aff'd* 110 F.3d 774 (Fed.Cir.1997). To create a genuine issue of fact, "evidence must be forthcoming from the nonmovant which would be sufficient to require submission to the jury of the dispute over the fact." *Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

## II. DISCUSSION

### A. Applicable Statutes and Regulations

19 U.S.C. § 1641(b)(4) provides that "A customs broker shall exercise responsible supervision and control over the customs business that it conducts." Subsection 1641(d)(1) provides that the Secretary of the Treasury may "impose a monetary penalty ... if it is shown that the broker ... (C) has violated any provision of any law enforced by the Customs Service or the rules or regulations issued under any such provision." 19 U.S.C. § 1641(d)(1)(C).

Customs asserts that Ricci violated 19 C.F.R. § 111.29(a), which in 1990, when the violations occurred, provided:

Payment of duty, tax, or other debt or obligation owing to the Government for which the broker is responsible, or for which the broker has received payment from a client, shall be made to the Government on or before the date that payment is due. Payments received by a broker from a client after the due date shall be transmitted to the Government within 5 working days from receipt by the broker.

19 C.F.R. § 111.29(a).

The statute limits the amount of monetary penalty the Secretary may impose to $30,000, but does not set forth the criteria by which the Secretary must determine the amount of penalty. 19 U.S.C. § 1641(d)(2)(A). Similarly, the regulation under which Customs enforces the statutory provision, 19 C.F.R. section 111.91 sets forth the $30,000 limit without a means of determining the actual amount of the penalty ... Customs assesses monetary penalties for failure to make timely payments pursuant to a set of guidelines that do not have the force of a statute or regulation. *See* 19 C.F.R. Part 171, App. C, V.D.2. That provision states that the "assessment amount" shall be "an amount equal to the value of any monies up to a maximum of $30,000 ...." *Id.* A similar provision states that there is "(n)o mitigation from an intentional violation." 19 C.F.R. Part 171, App. C, V.D.5.

19 U.S.C. section 1641(d)(2)(A) also provides for notice to the subject broker and opportunities for the broker to respond to charges against him:

[T]he appropriate customs officer shall serve notice in writing upon any customs broker to show cause why the broker should not be subject to a monetary penalty not to exceed $30,000 in total for a violation or violations of this section. The notice shall advise the customs broker of the allegations or complaints against him and shall explain that the broker has a right to respond to the allegations or complaints in writing within 30 days of the date of the notice. Before imposing a monetary penalty, the customs officer shall consider the allegations or complaints and any timely response made by the customs broker and issue a written decision. A customs broker against whom a monetary penalty has been issued under this section shall have a reasonable opportunity under

section 1618 of this title to make representations seeking remission or mitigation of the monetary penalty. Following the conclusion of any proceeding under section 1618 of this title, the appropriate customs officer shall provide to the customs broker a written statement which sets forth the final determination and the findings of fact and conclusions of law on which such determination is based.

19 U.S.C. § 1641(d)(2)(A).

▅▅▅ Section 1618 grants the Secretary of the Treasury discretion to remit or mitigate monetary penalties under several provisions governing customs, including the broker discipline provision. 19 U.S.C. § 1618. It should be noted, however, that courts have interpreted this grant of discretion to eliminate judicial review of section 1618 mitigation. "It is well-settled that decisions concerning mitigation and remission under 19 U.S.C. § 1618 are committed to the discretion of the executive and are not subject to judicial review." *Trayco, Inc. v. United States,* 994 F.2d 832, 838 (Fed.Cir.1993). "Actions taken by the Secretary under § 1618 are purely a matter of discretionary grace." *Kuehne & Nagel, Inc. v. United States,* 17 Cl.Ct. 11, 18 (1989). This does not prevent a broker from challenging the legality of the underlying penalty, however. *See Trayco,* 994 F.2d at 838–39.

**B. Application of the Law to the Facts**

Customs audited Ricci's records after his firm had submitted five non-negotiable checks for payment of duties. Plaintiff's Memorandum In Support of Its Cross-motion for Summary Judgment ("Plaintiff's Memorandum") Appendix at 7. The audit included tests of accounting records and other documents of Pier International, performed according to "generally accepted government auditing standards." *Id.*[4] at 9.

In pertinent part, the audit revealed 169 entries from June 1 through October 31, 1990, where Ricci failed to file entry summary and/or pay duties in a summary fashion. *Id.* at 10. Of these entries, 145 were violations by Ricci of 19 C.F.R. § 111.29(a), grouped as follows [5]:

- 135 instances in which the importer paid Ricci timely but he failed to pay Customs on or before the due date, involving a total of $351,398.78.

- 10 instances in which the importer paid Ricci late, and Ricci failed to pay Customs within five working days of receipt of the duties, involving a total of $19,845.49.

*Id.* at 11. The total value of the money involved in the foregoing violations was $371,244.27. At issue here are 89 of these late payments made between September 13, 1990 and November 14, 1990, of $240,842.04 in aggregate. Plaintiff's Memorandum at 2.

Appended to the audit report was a spreadsheet that identified each of the offending transactions, setting forth the following information: importer of record, filer entry number, entry date, payment due date, date Customs was paid, date the importer paid Pier International, number of days Ricci's payment to Customs was late, and the amount of duties and fees collected.[6] Plaintiff's Memorandum App. at pp. 16–23. For the entries in which the importer paid Ricci late and he paid Customs after the required five-working-day period, the spreadsheet stated both the number of days late the importer paid Ricci and the number of days late Ricci paid Customs. *Id.* at 23.

Based on that information, Customs concluded that it should impose the maximum penalty of $30,000. It notified Ricci of its decision in a pre-penalty notice dated April 3, 1992, as required by 19 U.S.C. § 1641(d)(2)(A). Plaintiff's Memorandum App. at 26–27. The pre-penalty notice stated

---

**4.** Ricci has submitted to the Court no cognizable evidence, either expert or percipient, to contest the validity of the audit's contents and conclusions.

**5.** In 24 instances, Ricci received payment from the importers late and submitted the funds to Customs within the required period of time. The

amount involved was $24,722.78. These transactions are not the subject of this litigation.

**6.** By the end of the audit, Ricci had paid all outstanding duties. This action involves penalties only.

that Ricci was being penalized under authority of 19 U.S.C. § 1641, and included an exhibit which set forth the factual underpinnings of the violations. In pertinent part, the notice said:

> Pier International, Inc. failed to file entry summary and/or pay duties on 169 entries timely. Of those 169 entries, the broker received payment timely from the importer in 135 instances, but failed to pay Customs on or before the due date. The duty remitted untimely amounted to $351,398.78.

*Id.* at 27. The notice informed Ricci that he could respond within 30 days "as to why a claim for monetary penalty should not be issued in the amount proposed." *Id.* at 26.

Ricci filed a response on June 9, 1992, after he had obtained a copy of the audit report through a Freedom of Information Act request. *Id.* at 29–49. In the response, Ricci made several arguments summarized as follows:

- Pier International had already been penalized by being placed on a certified-checkonly list by Customs, which caused it to incur bank charges of about $20,000.

- In sixteen instances, Customs rejected uncertified checks that Pier International had submitted before the broker had been formally notified of the certified check sanction, and it had submitted certified checks promptly.

- Pier International had paid liquidated damages on behalf of importers in an amount in excess of $22,000.

- Pier International had taken remedial steps to ensure that violations did not occur in the future.

- The $30,000 penalty would impose an extreme financial hardship on Pier International.

For these reasons, Ricci concluded that 19 U.S.C. § 1641's purpose would not be served by imposing the penalty on him, and that it should be canceled. Plaintiff's Memorandum App. at 49. On February 9, 1993, Customs replied with a letter stating that Ricci's submission had been reviewed, and Customs Headquarters had determined that the full

penalty should, nonetheless, be assessed. *Id.* at 56.

On March 12, 1993, Customs sent Ricci a Notice of Penalty and Demand for Payment, incorporating the information that had been set forth in the Prepenalty Notice Exhibit A, which summarized Customs' audit report. *Id.* at 59. The notice explained the basis for the penalty by incorporating the earlier prepenalty notice by reference, and stated that Ricci had "failed to exercise responsible supervision and control over it (*sic*) operations by failing to remit timely monies owed to U.S. Customs." *Id.* It demanded payment of the full $30,000 penalty and indicated that Ricci could make an additional submission within 30 days. *Id.* Ricci did so, seeking mitigation of the penalty. Subsequent correspondence reflects Customs' determination that no mitigation of the penalty was possible because the violations were intentional. *Id.* at 64–67.

At his deposition, Ricci admitted that the entries set forth in paragraph 6 of the Complaint were indeed late and stated that he had "no reason to dispute the days or the number of entries." *Id.* at 72, 73, 74, 76, 79, 80. He declined to review his records to verify independently whether the allegations were correct and stated, "I do not intend to dispute the facts." *Id.* at 81. He added that he did not intend to produce documents that would prove the factual allegations wrong. *Id.* at 81. Ricci also testified that his company's financial difficulties caused him to make the subject payments to Customs late. *Id.* at 83–85, 87. *There is no evidence that the late payments were made unintentionally, i.e., by mistake or inadvertence. To the contrary, Ricci testified that importers' checks were deposited in Pier International's corporate account and used by the company. Id.* at 87–88. Pier International's use of customer funds, combined with his failure to pay timely because the funds were being used to cover Pier International's "financial difficulties", demonstrates beyond refutation that Ricci's violations were intentional.

Ricci has offered nothing to contravene the government's evidence. He submitted a document titled "Defendant's Statement of Material Facts Which Are In Dispute," that

contains no references to evidence in the record. Rather, it offers several statements—by counsel—to the effect that there are disputed, material issues of fact. Ricci also submitted an Affidavit as an Exhibit to his memorandum in opposition to the Motion for Summary Judgment. This Affidavit does not make sufficient evidentiary assertions. Instead, he states that "I stand prepared to present the Court with considerable evidence ... that the penalty should be" set aside or reduced. Ricci Decl. at 2. Under the strictures of CIT Rule 56(f), its contents are not sufficient.

At this point in the proceedings, it is too late for Ricci to merely promise to present evidence. A properly supported motion for summary judgment must be opposed by evidence establishing genuine issues of material fact that are in controversy. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). "With respect to whether there is a genuine issue, the court may not simply accept a party's statement that a fact is challenged." *Barmag Barmer Maschinenfabrik v. Murata Machinery, Ltd.*, 731 F.2d 831, 835–36 (Fed. Cir.1984). Similarly, a court may not accept counsel's statement that a fact is challenged. *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (Fed.Cir.1984). "[T]he party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed.Cir.1987). The obligation of this Court under Rule 56 is to apply governing law to cognizable facts; it cannot and should not engage in speculation nor may it permit the parties to do so. The submissions presented by Ricci are not sufficient to contravene the evidence proffered by the government, and do not create a genuine issue of material fact.

Ricci has requested that the Court consider the mitigating factors set forth in *United States v. Modes Inc.*, 17 C.I.T. 627, 826 F.Supp. 504 (1993), in determining the appropriate amount of his penalty. The *Modes* factors were announced in a case that was brought under a different statute from the one at issue here, *viz.*, 19 U.S.C. § 1592.

That statute prohibits and punishes importation of goods under documents that are false or contain material omissions. 19 U.S.C. § 1592(a)(1). The *Modes* court did not discuss the effect of 19 U.S.C. § 1618 on its analysis. Nonetheless, the court appears to have referred to its list of mitigating factors not to determine whether mitigation was appropriate, but rather to determine the proper amount of the underlying penalty. 17 C.I.T. at 636, 826 F.Supp. at 512–13.

The Court need not determine whether the *Modes* factors should apply here, however, because it lacks a factual basis for applying them. The violations with which Ricci is charged, amply supported by the audit report, Ricci's deposition transcript and other evidence proffered by the government go to the heart of the customs broker's role in facilitating the collection of duties on imports. The sheer number of transactions and amount of money involved provides a more than adequate basis for the penalty sought by Customs.

Ricci has stated repeatedly in these proceedings that he does not contest that he made these payments late. Rather he contends that he is not at fault because financial conditions forced his actions. While the Court is not unsympathetic with the pressures that can be created by cash flow problems, it cannot conclude that they relieve a broker of the fundamental legal obligation to pay duties timely. On this record, a fine of the full $30,000 amount is warranted, and the Court imposes a penalty in this amount.

In making the foregoing determination, the Court notes that Ricci has proffered no evidence that would cause this court to consider a lower penalty. Examining the relevant factors from *Modes*, there is no evidence of Ricci's good faith effort to comply with the statute; rather he converted importers' funds to his own use. There is a history of violations, many predating the violations at issue here, all of which establish a pattern of late payments. While he asserts his inability to pay the fine, Mr. Ricci provided no evidence of his current financial condition. Conversely, there is ample evidence of the gravity of the violations, exacerbated by their magnitude.

Moreover, Mr. Ricci's record in these proceedings is one of singular obstruction characterized by his consistent refusal throughout discovery to review his records to confirm or dispute the allegations arrayed against him. Under these circumstances, the Court sees no basis for the smaller penalty Ricci seeks.

### C. Defenses

Mr. Ricci offers in response to the government's Motion for Summary Judgment little in the way of a defense the Court can recognize under the current circumstances of this case. The defenses he tries to raise are discussed hereafter, *seriatim.*

Ricci asserts that the government has failed to present a *prima facie* case for his liability because it failed to identify specifically any entry or transaction where Mr. Ricci is claimed to have violated 19 C.F.R. § 111.29(a). Defendant's Opposition at 8–9. This assertion is simply untrue. The government presented the detailed audit report, described above, which set forth the list of offending transactions in a clearly identifiable way. Plaintiff's Memorandum App. at 5–23. Moreover, it is apparent from the various notices and correspondence that traveled between Customs and Ricci or his counsel that the transactions at issue were identified and known to all involved.

■ Ricci also attacks the administrative proceedings that preceded this action, in particular the notice he was given of his offenses. The record establishes that Customs followed the notice and opportunity to respond procedure required by 19 U.S.C. section 1641(d)(2)(A). Moreover, it is apparent that Ricci availed himself fully of the opportunity to be heard and presented his arguments on several occasions. He filed papers addressing his defenses at each step of the proceedings. While he may have declined to take full advantage of his opportunity to contest the facts, the record shows that was his decision and not the result of a failure of notice. The actual notice and opportunity to be heard afforded by Customs gave Ricci his full due process rights and constitute exhaustion by the government of its administrative remedies. *See United States v. Obron Atlantic Corp.,* 862 F.Supp. 378, 383 (CIT 1994).[7]

Ricci suggests that sixteen entries were filed late *"only* because Customs rejected defendant's timely filings accompanied by uncertified checks," Defendant's Opposition at 10 (emphasis in original), but he failed to supply the Court with cognizable evidence to create an issue for trial. Moreover, even if sixteen transactions were to be eliminated, the remaining number of transactions and amount of duties involved would be of such a magnitude that the outcome of this action would not be affected.[8]

**7.** Ricci's reliance on *United States v. Stanley Works,* 17 C.I.T. 1378, 849 F.Supp. 46 (1993) and *United States v. Chow,* 17 C.I.T. 1372, 841 F.Supp. 1286 (1993) is misplaced. In each of these cases, Customs severely truncated the respondents' time to respond to charges, allowing no meaningful opportunity to be heard. Therefore, the courts concluded that Customs had failed to exhaust its administrative remedies, which is a jurisdictional defect. In contrast, Customs here granted Ricci ample, meaningful opportunity to be heard, and he took advantage of it. There is no basis for a jurisdictional challenge on these grounds.

**8.** Ricci also makes a statute of limitations argument, contending that five checks that were returned during May and June, 1990 are outside the five-year limitations period provided by 19 U.S.C. § 1621. The checks are outside the limitations period, and consequently are not considered in adjudicating the penalty at issue here. It appears that Ricci however, makes the additional argument that all of his late-paid transactions should be barred because the returned checks led to his placement on the certified-checks-only list, which in turn led to the banking charges that caused his financial distress and, ultimately, his late payments. Assuming that Ricci's theory of causation is valid, the argument imbues the statute of limitations with too much authority. The Court finds each of the late payments to be a separate transaction. It would turn statute of limitations doctrine on its head to allow the statute to bar an action on transactions that occurred within the limitations period because the course of events began outside the period. The statute simply does not reach forward in that way. *Cf., e.g., United States v. Starrett,* 55 F.3d 1525, 1544 (11th Cir.1995) (Statute of limitations reached back in RICO case to allow prosecution of actions that would otherwise have been time barred, because they were part of a pattern of conduct that ended within the limitations period).

Finally, Ricci suggests that the government's reliance on 89 of the 169 transactions in its motion for summary judgment prevents the Court from granting the government's motion because it is not clear which transactions are at issue and whether the penalty would have been assessed had Customs reviewed the 89 transactions instead of all 169. That argument is specious. The transactions at issue are identifiable by examining the dates listed in Customs' audit. The 89 transactions cited reflect a clear and continuous pattern of malfeasance affecting duties of $240,842.04, well in excess of the $30,000 fine. This would be so, even if one reduced the number of included transactions by the 16 that Ricci would eliminate. The remaining 73 transactions are ample evidence of dilatory behavior in paying late to support the Court's assessment of a penalty in the amount of $30,000.

As set forth at the beginning of this opinion, the Court does not reach Ricci's motion to dismiss paragraphs 5, 7, 8, 9, 12 and a portion of paragraph 11. The case is decided in its entirety on the basis of the government's motion for summary judgment as to the substantive claims in paragraph 6. The Motion To Dismiss other parts of the Complaint is thus rendered moot.

### III. CONCLUSION

The Court concludes on the record before it that the government has established that Ricci made 145 late payments of duties in violation of governing regulations involving an aggregate $371,244.27, and that the pattern of late payments was intentional. The government has also established that 89 of these payments occurred between September 13 and November 14, 1990, involving $240,842.04 in untimely paid duties. Ricci had adequate notice of the charges against him, and a full and fair opportunity to be heard. He did not establish a cognizable excuse for the late payments. Based on the facts and law before the Court, a penalty is warranted in the amount of $30,000.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted.

### JUDGMENT ORDER

Plaintiff's Motion for Summary Judgment and Defendant's Motion to Dismiss having been heard at oral argument and submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that Plaintiff's Motion for Summary Judgment be and hereby is **GRANTED;** and it is further

ORDERED, ADJUDGED and DECREED that Defendant's Motion to Dismiss be and hereby is **DENIED;** and it is further

ORDERED, ADJUDGED and DECREED that pursuant to 19 U.S.C. section 1641(d)(2)(A), Defendant Eugene F. Ricci shall pay to the United States a civil penalty in the amount of $30,000.