**Slip Op. 00-53**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| ALLEN N. O'QUINN, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES; <br> UNITED STATES SECRETARY OF <br> TREASURY, <br><br> Defendants. | BEFORE: Pogue, Judge <br><br> Court No. 99-03-00136 |

[Determination of the Secretary of the Treasury is remanded.]

Decided: May 10, 2000

Fitch, King and Caffentzis (James Caffentzis) for Plaintiff.

David W. Ogden, Acting Assistant Attorney General, Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Mikki Graves Walser, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Christopher C. Smith, Office of the Assistant Chief Counsel, U.S. Customs Service, Of Counsel, for Defendants.

**OPINION**

**Pogue, Judge:** Plaintiff Allen O'Quinn ("Plaintiff") requests judgment upon the agency record pursuant to USCIT Rule 56.1. Plaintiff challenges a decision of the Deputy Assistant Secretary

("Assistant Secretary") of the Department of Treasury ("Treasury")

affirming the U.S. Customs Service's ("Customs") denial of credit

for his responses to two questions on the April 1998 customs broker

examination.[1]


## Background

19 U.S.C. § 1641(b)(1)(1994) provides that "[n]o person may

conduct customs business (other than solely on behalf of that

person) unless that person holds a valid customs broker's license

issued by the Secretary [of Treasury] under paragraph (2) or (3)."

Paragraph (2) states,

> In assessing the qualifications of an applicant [for a
> customs broker's license], the Secretary [of Treasury]
> may conduct an examination to determine the applicant's
> knowledge of customs and related laws, regulations and
> procedures, bookkeeping, accounting, and all other
> appropriate matters.

19 U.S.C. § 1641(b)(2).

In April 1998, Plaintiff sat for the customs broker

examination for the purpose of obtaining a customs broker's

license.  Plaintiff received a score of 73.07%, 1.93% below a

---

[1]The Secretary of the Treasury is authorized to decide
appeals of a customs broker's license denial by Customs.  The
Secretary of the Treasury has delegated this authority to the
Deputy Assistant Secretary.  See Rudloff v. United States, 19 CIT
1245, 1246 n.2 (1995), aff'd, 108 F.3d 1392 (Fed. Cir. 1997).

passing score.[2]  Pursuant to 19 C.F.R. § 111.17(a), Plaintiff wrote a letter to Customs on May 13, 1998, requesting a review of his examination and challenging six of the test questions.[3]  By letter dated August 21, 1998, Customs informed Plaintiff that he would be given credit for one additional answer.  Nevertheless, Plaintiff's new score of 74.4% was still short of a passing grade.

Pursuant to 19 C.F.R. § 111.17(b), Plaintiff appealed Customs' decision to Treasury on September 28, 1998, specifically requesting review of questions 17 and 62.  In response, the Assistant Secretary determined that Plaintiff's responses to questions 17 and 62 were incorrect and denied his appeal by letter on January 4, 1999.  Suit in this court subsequently followed.  See 19 U.S.C. § 1641(e)(1); 19 C.F.R. § 111.17(c).

### Jurisdiction and Standard of Review

Pursuant to 28 U.S.C. § 1581(g)(1)(1994), the Court has exclusive jurisdiction over a denial of a customs broker's license.  Regarding the appropriate standard of review, the statute provides that "the findings of the Secretary [of Treasury] as to the facts,

---

[2]A passing score for the April 1998 customs broker examination was 75%.  See 19 C.F.R. § 111.13(e).

[3]Customs prepares and grades the examination.  See 19 C.F.R. § 111.13(a).

if supported by substantial evidence, shall be conclusive."  19

U.S.C. § 1641(e)(3)(emphasis added).  Both 19 U.S.C. § 1641 and 28

U.S.C. § 2640 (1994), however, are silent as to the standard of

review the Court should apply to legal questions in customs

broker's license denial cases.  "Therefore, [in reviewing legal

questions,] the [C]ourt refers to the Administrative Procedure Act

[("APA")], which gives general guidance regarding the scope and

standard of review to be applied in various circumstances." United

States v. Ricci, 21 CIT 1145, 1146, 985 F. Supp. 125, 126 (1997),

aff'd, 178 F.3d 1307 (Fed. Cir. 1998)(citations omitted); see also

Tarnove v. Bentsen, 17 CIT 1324, 1324 (1993); DiIorio v. United

States, 14 CIT 746, 747 (1990).

Here, there is no dispute between the parties with regard to

the facts.  Rather, Plaintiff's motion challenges the legal basis

of the Assistant Secretary's decision.  Therefore, applying the

APA, the Court will uphold the final administrative decision of the

Assistant Secretary in this case, unless his decision was

"arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. § 706(2)(A)(1994). When applied to

agency action independent of review of findings of fact, the

arbitrary and capricious test requires that the agency engage in

reasoned decision-making in grading the exam.  See generally 2

Kenneth Culp Davis and Richard J. Pierce, Jr., <u>Administrative Law</u>

<u>Treatise</u> § 11.4, at 203 (3d ed. 1994).


## Discussion

The exam instructs applicants to choose the <u>correct</u> answer to

each question from among the five alternatives (A, B, C, D or E)

presented.  <u>See</u> Apr. 1998 Customs Broker's License Examination

(attached to Defs.' Am. Mem. in Opp'n to Mot. J. Agency R.).

Further, the exam instructs the examinees to refer to Title 19,

Code of Federal Regulations (19 C.F.R. Parts 1 to 199) revised as

of April 1, 1997, in responding to the questions.  <u>See</u> <u>id.</u>

**1. Question 17:**

Question 17 requires the examinee to assess which deductions

are allowed in determining the appraised value of imported goods.

The question reads as follows:

> The terms of sale stated on the invoice are Freight on
> Board (FOB).  Which of the following deductions are
> allowed when determining the entered value?
>
> A)   The freight costs are deductible.
> B)   The insurance costs are deductible.
> C)   The freight and insurance costs are both
>      deductible.
> D)   The inland freight costs are deductible.
> E)   No deductions are allowed.

The official answer to question 17 is (E).  Plaintiff selected (C)

as his answer.

To explain its reasoning for why (E) is the correct answer, Defendants first note that valuation of merchandise is exclusively addressed under 19 U.S.C. § 1401a (1994) and 19 C.F.R. § 152 (1997).  See Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 8-9. Both of these provisions, in turn, instruct that the appraised value of imported merchandise be determined on the basis of the "transaction value."  See 19 U.S.C. § 1401a(1); 19 C.F.R. § 152.101(b).[4]  "Transaction value" is defined as the "price actually paid or payable" by the buyer.  See 19 U.S.C. § 1401a(b); 19 C.F.R. § 152.103(b).  Further, the "price actually paid or payable" is defined as:

---

[4]19 U.S.C. § 1401a(a)(1) provides:

Except as otherwise specifically provided for in this chapter, imported merchandise shall be appraised, for the purposes of this chapter, on the basis of the following:
(A) The transaction value provided for under subsection (b) of this section.
(B) The transaction value of identical merchandise provided for under subsection (C) of this section, if the value referred to in subparagraph (A) cannot be determined . . . .

19 C.F.R. § 152.101(b) provides:

Imported merchandise will be appraised on the basis, and in the order, of the following: (1) The transaction value provided for in § 152.103 . . . .

> [T]he total payment (whether direct or indirect, and <u>exclusive of any costs, charges, or expenses incurred for transportation, insurance, and related services incident to the international shipment of the merchandise</u> from the country of exportation to the place of importation in the United States) made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the seller.

19 U.S.C. § 1401a(b)(4)(emphasis added); 19 C.F.R. § 152.102(f).

Defendants submit that the "FOB" term supplied in the question indicates that "the price actually paid or payable" did not include any "charges . . . incident to the international shipment of the merchandise" that would be required by 19 C.F.R. § 152.102(f) to be deducted. See Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 12.

As Defendants cite in their brief, see id. at 11, Black's Law Dictionary defines "FOB" as:

> Free on board some location (for example, FOB shipping point; FOB destination). A delivery term which requires a seller to ship goods and bear the expense and risk of loss to the F.O.B. point designated. The invoice price includes delivery at seller's expense to that location. Title of goods usually passes from seller to buyer at the FOB location.

Black's Law Dictionary 642 (6th ed. 1990).

Defendants argue that the term "FOB," standing alone, is normally used to refer to the port of embarkation, signaling that costs incident to the <u>international</u> shipment of the merchandise are not included in the invoice price in the first place because the

seller is only obligated to bear the expense and risk of loss of transporting the goods to the port of export.  See Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 12.  Answers (A), (B), (C) and (D) would be incorrect under this analysis because they provide deductions for costs incident to international shipment that would not have been included already in the price paid by the buyer.  See id.  Thus, Defendants assert that the correct answer to question 17 is (E)("No deductions are allowed.").  See id.

Plaintiff chose (C), which allows deductions for freight and insurance costs, as the correct answer to question 17.  Plaintiff first asserts that the question is unfair and should have been eliminated from the exam because of its use of the non-industry term "freight on board" as the long description of the invoice's terms of sale.  See Pl.'s Mem. Supp. Mot. J. Agency R. at 7-8.  In the alternative, Plaintiff argues that the question does not contain sufficient information to choose an answer, since FOB can refer to both port of embarkation and port of delivery.  See id. at 8.

Responding to Plaintiff's first argument, Defendants admit that the term "freight on board" is not an industry term.  See Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 11.  Nevertheless, Defendants assert that, since "the term 'freight on board' is not

used in the industry, . . . [Plaintiff] should have known that the term 'FOB' was the key in responding to the question." Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 11-12. The question's use of "FOB," however, is ambiguous.

As discussed above, Defendants' reasoning that (E) is the correct answer relies on its assertion that "FOB" standing alone normally refers to the port of embarkation (or the shipping port). See id. at 12. However, Defendants neither cite, nor can the Court locate, any authority for this assertion. To the contrary, legal and international trade dictionaries alike indicate that, under the international understanding of the term, either a shipping point or a destination point should immediately follow the "FOB" term to avoid ambiguity.[5]

For instance, when defining "FOB" in its administrative rulings, Customs itself refers to the International Chamber of Commerce's Incoterms 1990, Publication No. 460 ("Incoterms"). See HQ 546225 (Apr. 14, 1997); HQ 225166 (Apr. 10, 1996). That authority indicates that a named port of shipment must follow the "FOB" term, signifying "that the buyer has to bear all costs and

---

[5]The legal definition of "F.O.B." at U.C.C. § 2-319 is not controlling in an international sale. See 3A Ronald A. Anderson, Uniform Commercial Code § 2-319:4, at 352 (3d ed. 1995).

risks of loss or damage to the goods from that point."  Incoterms

at 38.   Moreover, as mentioned above, Black's Law Dictionary

defines "FOB" as: "Free on board some location (for example, FOB

shipping point; FOB destination).  A delivery term which requires

a seller to ship goods and bear the expense and risk of loss to the

F.O.B. point designated."  Black's Law Dictionary 642 (6th ed.

1990)(emphasis added); see also Edward G. Hinkelman, Dictionary of

International Trade 85 (1994); Carolyn R. Gipson, The McGraw-Hill

Dictionary of International Trade and Finance 170-71 (1994).  In

short, all of the aforementioned lexicographic authorities require

a named point to follow the "FOB" term; otherwise, the term in and

of itself is ambiguous.

Therefore, the Court agrees with Plaintiff's argument that the

question does not contain sufficient information to choose an

answer.  Defendants concede that, had the question provided that

FOB referred to the port of delivery, Plaintiff's answer choice

would have been correct.  See Defs.' Am. Opp'n to Mot. J. Agency R.

at 12.  Given the question's incorrect use of the delivery term

"FOB," it was unreasonable for the Assistant Secretary to affirm

Customs' denial of Plaintiff's appeal of this question.  Therefore,

"[b]ecause of faulty drafting, [P]laintiff's answer must be

considered correct or the question must be voided."  Carrier v.

United States, 20 CIT 227, 232 (1996)(holding that the official

answer could not be considered more correct than the plaintiff's

response).

**2. Question 62**

Question 62 tests an examinee's knowledge relating to record

retention requirements.  The question reads as follows:

Which of the following records is a broker NOT required
to retain at his/her place of business?

>     A)    accounting records as they pertain to the
>           broker's financial transactions.
>     B)    copies of entries filed for clients.
>     C)    powers of attorney authorizing the broker
>           to conduct customs business for clients.
>     D)    his/her permit to conduct business.
>     E)    a statement identifying employees
>           authorized to transact customs business
>           on the broker's behalf.

The official answer to question 62 is (E).  Plaintiff selected (D)

as his answer.

Defendants reason that (E) is the correct answer because

various sections of the regulations specify that certain records

must be maintained at the customs broker's place of business.  See

Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 14.  As background,

Defendants point to the definition of "records" set out in 19

C.F.R. § 111.1 (1997).  See id.  The provision identifies records

as "those documents identified in § 162.1a of this chapter and kept

as provided in § 162.1b of this chapter."   19 C.F.R. § 111.1.

Section 162.1a(a)(1997),[6] in turn, provides a general description

of documents that constitute "records," while § 162.1b(a)(1997)[7]

_____

[6]19 C.F.R. § 162.1a(a) provides:

(a) . . . "Records" means:
     (1) Statements, declarations, books, papers,
     correspondence, accounts, technical data, automated
     record storage devices (e.g., magnetic discs and
     tapes), computer programs necessary to retrieve
     information in a usable form, and other documents
     which:
          (i) Pertain to any importation, or to the
          information contained in the documents required by
          law or regulation under the Tariff Act of 1930, as
          amended, in connection with the entry of
          merchandise;
          (ii) Are of the type normally kept in the ordinary
          course of business; and
          (iii) Are sufficiently detailed:
               (A) To establish the right to make entry,
               (B) To establish the correctness of an entry,
               (C) To determine the liability of any person
               for duties and taxes due, or which may be
               due, the United States,
               (D) To determine the liability of any person
               for fines, penalties, and forfeitures, and
               (E) To determine whether the person has
               complied with the laws and regulations
               administered by the Customs Service; and
     (2) Any other documents required under laws or
     regulations administered by the Customs Service.


[7]19 C.F.R. § 162.1b(a) provides,

(a) . . . Any owner, importer, consignee, or their
agent who imports, or knowingly causes to be imported,
any merchandise into the Customs territory of the
United States, shall make and keep records as defined

specifies the parties who are required to keep records.

Defendants cite specific regulations to demonstrate that answer choices (A), (B), (C), and (D) are incorrect.  For example, Defendants point to 19 C.F.R. § 111.21 (1997) to support their conclusion that choices (A) and (B) are incorrect.  See Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 15-16.  That regulation states,

> Each broker shall keep current in a correct, orderly, and itemized manner records of account reflecting all his financial transactions as a broker.  He shall keep and maintain on file a copy of each entry made by him with all supporting records, except those documents he is required to file with Customs, and copies of all his correspondence and other records relating to his Customs business.

19 C.F.R. § 111.21 (emphasis added).  Brokers are thus required to retain accounting records as they pertain to the broker's financial transactions (answer choice (A)), as well as copies of entries filed for clients (answer choice (B)).

Moreover, Defendants cite 19 C.F.R. § 111.23(a)(1)(1997) to support its finding that these records must be retained at the broker's "place of business."  Section 111.23 provides that "[t]he records, as defined in § 111.1(f), and required by § 111.21 . . . to be kept by the broker, shall be retained at the port, unless notification of centralized accounting records is given under

_____

in § 162.1a(a).

paragraph (e) of this section, or notification is provided by electronic entry filers . . . ." (Emphasis added).  Defendants presumably equate the term "port" with the broker's place of business.  Because 19 C.F.R. § 111.19 (1997) requires a license applicant to maintain a "place of business at the port where the application is filed," this inference is reasonable.

Next, Defendants refer to 19 C.F.R. § 141.46 (1997) to eliminate answer choice (C) as the correct answer to question 62. See Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 15-16.  Section 141.46 provides:

> Before transacting Customs business in the name of his principal, a customhouse broker is required to obtain a valid power of attorney to do so.  He is not required to file the power of attorney with a port director. Customhouse brokers shall <u>retain powers of attorney with their books and papers</u>, and make them available to representatives of the Department of the Treasury . . . .

(Emphasis added).  Since this provision requires brokers to retain powers of attorney authorizing the broker to conduct customs business for clients (answer choice (C)), Defendants conclude that answer choice (C) is incorrect. Presumably, Defendants infer that requiring the broker to retain the power of attorney with her "books and papers" is equivalent to requiring the broker to retain the document at her place of business.   This inference is

reasonable.

Finally, Defendants cite 19 C.F.R. § 111.43 (1997) to illustrate that answer choice (D) is incorrect. See Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 16. Section 111.43 requires each licensee to "display its permit in the principal office within the district so it may be seen by anyone transacting business in the office. Photocopies of the permit shall be conspicuously posted in each branch office within the district. Photocopies of the license also may be posted." Since this provision requires a broker to retain her permit to conduct business, or copy thereof, at her principal office and at all branch offices, Defendants conclude that answer choice (D) is incorrect.

Having eliminated answer choices (A), (B), (C), and (D), Defendants conclude that answer choice (E) is the correct answer to question 62. See Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 16. As further support for answer (E), Defendants cite 19 C.F.R. § 111.3(b)(2)(1997).[8] See id. This regulation requires the broker

---

[8]19 C.F.R. § 111.3 provides,

A license is not required to engage in the following transactions with the Treasury Department or any representative thereof:

. . . .

to file the authorization statement identified in answer (E) with Customs, rather than retain it herself.  See 19 C.F.R. § 111.3(b)(2).  Additionally, pursuant to 19 C.F.R. § 111.21, documents required to be filed with Customs do not have to be retained by the broker.  Therefore, Defendants conclude that a broker is not required to retain such an authorization at her place of business.  See Defs.' Am. Mem. Opp'n Mot. J. Agency R. at 16.

Plaintiff selected "D" as the answer to question 62.  He asserts that question 62 has no answer, and, in the alternative, that the question has more than one correct answer.  See Pl.'s Mot. J. Agency R. at 3.

Plaintiff first argues that, "[i]f [§ 111.3(b)(2)] is intended to support the conclusion that (E) is the correct answer, it requires one to assume that documents filed with Customs need not be retained at the broker's place of business."  See id. at 5.  To support his argument, however, Plaintiff relies on regulations that

---

(b) As employee of brokers. An employee of a broker, acting solely for his employer, is not required to be licensed where: . . .
    (2) Authorized to transact other business. The broker has filed with the port director a statement identifying the employee as authorized to transact business on his behalf. Such statement shall also be filed at each port within the district where the broker wishes the employee to act for him.

were not in force when he took the customs broker examination.  As noted above, Plaintiff took the April 1998 examination, which instructs examinees to refer to the customs regulations revised as of April 1, 1997.  Instead, Plaintiff cites the 1998 version of 19 C.F.R. § 111.21 (effective on July 16, 1998).  The amended version of § 111.21 indeed does not state that brokers do not have to retain documents filed with Customs.  The 1997 version of 19 C.F.R. § 111.21, however, specifically states that documents required to be filed with Customs do not have to be retained by the customs broker.  Therefore, Plaintiff's first argument is not persuasive.

Plaintiff next argues that the question has more than one correct answer.  As Plaintiff points out, see Pl.'s Mot. J. Agency R. at 7, 19 C.F.R. § 111.23(a)(1) indicates that the place of retention may be other than the broker's place of business. Specifically, a broker may keep the records required to be retained by § 111.21 at a centralized storage location upon providing written notice to Customs.  See 19 C.F.R. § 111.23(a)(1) & (e). Accordingly, the regulations indicate that at least answer choices (A) and (B) (accounting records and entries) are also technically correct responses to question 62 because, pursuant to § 111.23(a)(1) & (e), these documents are not necessarily required to be retained by the broker at her place of business.  Defendants do

not respond to this argument.   In fact, Defendants acknowledge
that, "pursuant to §§ 111.21 [and] 111.23(a)(1) . . . of the
customs regulations, the . . . documents are to retained at the
broker's place of business at the port <u>or an approved centralized
location</u> . . . ."   Defs.' Am. Mem. Opp'n Mot. for J. Agency R. at
16 (emphasis added).

Thus, technically, answer choice (E) is not the only correct
response to question 62.  Unlike question 17, however, Plaintiff's
response to question 62, (D), is wrong in any case because the
applicable regulations clearly require a customs broker to display
her permit, or copies thereof, in all her places of business.[9]  <u>See</u>
19 C.F.R. § 111.43.  Nevertheless, the Court cannot conclude as a
matter of law that answer (E) is the only correct answer to
question 62.   Therefore, this matter must be remanded to the
Assistant  Secretary  for  reconsideration  to  determine  the
appropriate disposition of a question that, although answered
incorrectly by the test-taker in any event, contains more than one

---

[9]Even Plaintiff concedes that, under its second argument,
answer (D) would still be incorrect.  <u>See</u> Pl.'s Mot. J. Agency R.
at 7.  Although Plaintiff in a footnote suggests that answer (D)
<u>could</u> be correct if one interpreted "principal office" as being
distinct from "place of business," <u>see</u> <u>id.</u> at n.6, it is
reasonable for Customs to infer that the two phrases are
equivalent.

correct answer.

## Conclusion

For the foregoing reasons, the Court finds that the Assistant Secretary unreasonably affirmed Customs' denial of Plaintiff's appeal as to questions 17 and 62.  Accordingly, this case is remanded.  Plaintiff's answer to question 17 must either be deemed correct or the question must be voided.  If the treatment of question 17 results in a passing grade for Plaintiff, question 62 need not be addressed.

So ordered.

_____
Donald C. Pogue
Judge

Dated:    May 10, 2000
          New York, New York