**Allen N. O'QUINN, Plaintiff,**

v.

**The UNITED STATES; United States Secretary of Treasury, Defendants.**

**Slip Op. 00–53.**
**Court No. 99–03–00136.**

United States Court of International Trade.

May 10, 2000.

Fitch, King and Caffentzis (James Caffentzis), New York City, for plaintiff.

David W. Ogden, Acting Assistant Attorney General, Washington, DC, Joseph I. Liebman, Attorney–in–Charge, International Trade Field Office, New York City, Mikki Graves Walser, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, New York City; Christopher C. Smith, Office of the Assis-

tant Chief Counsel, U.S. Customs Service, Of Counsel, for defendants.

## OPINION

POGUE, Judge.

Plaintiff Allen O'Quinn ("Plaintiff") requests judgment upon the agency record pursuant to USCIT Rule 56.1. Plaintiff challenges a decision of the Deputy Assistant Secretary ("Assistant Secretary") of the Department of Treasury ("Treasury") affirming the U.S. Customs Service's ("Customs") denial of credit for his responses to two questions on the April 1998 customs broker examination.[1]

### Background

19 U.S.C. § 1641(b)(1)(1994) provides that "[n]o person may conduct customs business (other than solely on behalf of that person) unless that person holds a valid customs broker's license issued by the Secretary [of Treasury] under paragraph (2) or (3)." Paragraph (2) states,

> In assessing the qualifications of an applicant [for a customs broker's license], the Secretary [of Treasury] may conduct an examination to determine the applicant's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters.

19 U.S.C. § 1641(b)(2).

In April 1998, Plaintiff sat for the customs broker examination for the purpose of obtaining a customs broker's license. Plaintiff received a score of 73.07%, 1.93% below a passing score.[2] Pursuant to 19 C.F.R. § 111.17(a), Plaintiff wrote a letter to Customs on May 13, 1998, requesting a review of his examination and challenging six of the test questions.[3] By letter dated August 21, 1998, Customs informed Plain-

tiff that he would be given credit for one additional answer. Nevertheless, Plaintiff's new score of 74.4% was still short of a passing grade.

Pursuant to 19 C.F.R. § 111.17(b), Plaintiff appealed Customs' decision to Treasury on September 28, 1998, specifically requesting review of questions 17 and 62. In response, the Assistant Secretary determined that Plaintiff's responses to questions 17 and 62 were incorrect and denied his appeal by letter on January 4, 1999. Suit in this court subsequently followed. *See* 19 U.S.C. § 1641(e)(1); 19 C.F.R. § 111.17(c).

### Jurisdiction and Standard of Review

Pursuant to 28 U.S.C. § 1581(g)(1)(1994), the Court has exclusive jurisdiction over a denial of a customs broker's license. Regarding the appropriate standard of review, the statute provides that "the findings of the Secretary [of Treasury] *as to the facts*, if supported by substantial evidence, shall be conclusive." 19 U.S.C. § 1641(e)(3)(emphasis added). Both 19 U.S.C. § 1641 and 28 U.S.C. § 2640 (1994), however, are silent as to the standard of review the Court should apply to legal questions in customs broker's license denial cases. "Therefore, [in reviewing legal questions,] the [C]ourt refers to the Administrative Procedure Act [('APA')], which gives general guidance regarding the scope and standard of review to be applied in various circumstances." *United States v. Ricci*, 21 CIT 1145, 1146, 985 F.Supp. 125, 126 (1997), *aff'd*, 178 F.3d 1307 (Fed.Cir.1998) (citations omitted); *see also Tarnove v. Bentsen*, 17 CIT 1324, 1324 (1993); *DiIorio v. United States*, 14 CIT 746, 747 (1990).

Here, there is no dispute between the parties with regard to the facts. Rather,

1. The Secretary of the Treasury is authorized to decide appeals of a customs broker's license denial by Customs. The Secretary of the Treasury has delegated this authority to the Deputy Assistant Secretary. *See Rudloff v. United States*, 19 CIT 1245, 1246 n. 2 (1995), *aff'd*, 108 F.3d 1392 (Fed.Cir.1997).

2. A passing score for the April 1998 customs broker examination was 75%. *See* 19 C.F.R. § 111.13(e).

3. Customs prepares and grades the examination. *See* 19 C.F.R. § 111.13(a).

Plaintiff's motion challenges the legal basis of the Assistant Secretary's decision. Therefore, applying the APA, the Court will uphold the final administrative decision of the Assistant Secretary in this case, unless his decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)(1994). When applied to agency action independent of review of findings of fact, the arbitrary and capricious test requires that the agency engage in reasoned decision-making in grading the exam. *See generally* 2 Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law Treatise* § 11.4, at 203 (3d ed.1994).

### Discussion

The exam instructs applicants to choose the *correct* answer to each question from among the five alternatives (A, B, C, D or E) presented. *See* Apr. 1998 Customs Broker's License Examination (attached to Defs.' Am. Mem. in Opp'n to Mot. J. Agency R.). Further, the exam instructs the examinees to refer to Title 19, Code of Federal Regulations (19 C.F.R. Parts 1 to 199) revised as of April 1, 1997, in responding to the questions. *See id.*

### 1. Question 17:

 Question 17 requires the examinee to assess which deductions are allowed in determining the appraised value of imported goods. The question reads as follows:

The terms of sale stated on the invoice are Freight on Board (FOB). Which of the following deductions are allowed when determining the entered value?

A) The freight costs are deductible.

B) The insurance costs are deductible.

C) The freight and insurance costs are both deductible.

D) The inland freight costs are deductible.

E) No deductions are allowed.

The official answer to question 17 is (E). Plaintiff selected (C) as his answer.

To explain its reasoning for why (E) is the correct answer, Defendants first note that valuation of merchandise is exclusively addressed under 19 U.S.C. § 1401a (1994) and 19 C.F.R. § 152 (1997). *See* Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 8–9. Both of these provisions, in turn, instruct that the appraised value of imported merchandise be determined on the basis of the "transaction value." *See* 19 U.S.C. § 1401a(1); 19 C.F.R. § 152.101(b).[4] "Transaction value" is defined as the "price actually paid or payable" by the buyer. *See* 19 U.S.C. § 1401a(b); 19 C.F.R. § 152.103(b). Further, the "price actually paid or payable" is defined as:

[T]he total payment (whether direct or indirect, and *exclusive of any costs, charges, or expenses incurred for transportation, insurance, and related services incident to the international shipment of the merchandise* from the country of exportation to the place of importation in the United States) made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the seller.

19 U.S.C. § 1401a(b)(4)(emphasis added); 19 C.F.R. § 152.102(f).

Defendants submit that the "FOB" term supplied in the question indicates that "the price actually paid or payable" did not include any "charges ... incident to the

4. 19 U.S.C. § 1401a(a)(1) provides:
Except as otherwise specifically provided for in this chapter, imported merchandise shall be appraised, for the purposes of this chapter, on the basis of the following:
(A) The transaction value provided for under subsection (b) of this section.
(B) The transaction value of identical merchandise provided for under subsec-

tion (C) of this section, if the value referred to in subparagraph (A) cannot be determined ....
19 C.F.R. § 152.101(b) provides:
Imported merchandise will be appraised on the basis, and in the order, of the following:
(1) The transaction value provided for in § 152.103 ....

international shipment of the merchandise" that would be required by 19 C.F.R. § 152.102(f) to be deducted. *See* Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 12.

As Defendants cite in their brief, *see id.* at 11, *Black's Law Dictionary* defines "FOB" as:

> Free on board some location (for example, FOB shipping point; FOB destination). A delivery term which requires a seller to ship goods and bear the expense and risk of loss to the F.O.B. point designated. The invoice price includes delivery at seller's expense to that location. Title of goods usually passes from seller to buyer at the FOB location.

*Black's Law Dictionary* 642 (6th ed.1990).

Defendants argue that the term "FOB," standing alone, is normally used to refer to the port of embarkation, signaling that costs incident to the *international* shipment of the merchandise are not included in the invoice price in the first place because the seller is only obligated to bear the expense and risk of loss of transporting the goods to the port of export. *See* Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 12. Answers (A), (B), (C) and (D) would be incorrect under this analysis because they provide deductions for costs incident to international shipment that would not have been included already in the price paid by the buyer. *See id.* Thus, Defendants assert that the correct answer to question 17 is (E)("No deductions are allowed."). *See id.*

Plaintiff chose (C), which allows deductions for freight and insurance costs, as the correct answer to question 17. Plaintiff first asserts that the question is unfair and should have been eliminated from the exam because of its use of the non-industry term "freight on board" as the long description of the invoice's terms of sale. *See* Pl.'s Mem. Supp. Mot. J. Agency R. at 7–8. In the alternative, Plaintiff argues that the question does not contain sufficient information to choose an answer, since FOB can refer to both port of embarkation and port of delivery. *See id.* at 8.

Responding to Plaintiff's first argument, Defendants admit that the term "freight on board" is not an industry term. *See* Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 11. Nevertheless, Defendants assert that, since "the term 'freight on board' is not used in the industry, ... [Plaintiff] should have known that the term 'FOB' was the key in responding to the question." Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 11–12. The question's use of "FOB," however, is ambiguous.

As discussed above, Defendants' reasoning that (E) is the correct answer relies on its assertion that "FOB" standing alone normally refers to the port of embarkation (or the shipping port). *See id.* at 12. However, Defendants neither cite, nor can the Court locate, any authority for this assertion. To the contrary, legal and international trade dictionaries alike indicate that, under the international understanding of the term, either a shipping point or a destination point should immediately follow the "FOB" term to avoid ambiguity.[5]

For instance, when defining "FOB" in its administrative rulings, Customs itself refers to the International Chamber of Commerce's *Incoterms 1990*, Publication No. 460 (*"Incoterms"*). *See* HQ 546225 (Apr. 14, 1997); HQ 225166 (Apr. 10, 1996). That authority indicates that a named port of shipment must follow the "FOB" term, signifying "that the buyer has to bear all costs and risks of loss or damage to the goods from that point." *Incoterms* at 38. Moreover, as mentioned above, *Black's Law Dictionary* defines "FOB" as: "Free on board *some location* (for example, FOB shipping point; FOB destination). A delivery term which re-

---

**5.** The legal definition of "F.O.B." at U.C.C. § 2–319 is not controlling in an international sale. *See* 3A Ronald A. Anderson, *Uniform Commercial Code* § 2–319:4, at 352 (3d ed.1995).

quires a seller to ship goods and bear the expense and risk of loss *to the F.O.B. point designated." Black's Law Dictionary* 642 (6th ed.1990)(emphasis added); *see also* Edward G. Hinkelman, *Dictionary of International Trade* 85 (1994); Carolyn R. Gipson, *The McGraw–Hill Dictionary of International Trade and Finance* 170–71 (1994). In short, all of the aforementioned lexicographic authorities require a named point to follow the "FOB" term; otherwise, the term in and of itself is ambiguous.

Therefore, the Court agrees with Plaintiff's argument that the question does not contain sufficient information to choose an answer. Defendants concede that, had the question provided that FOB referred to the port of delivery, Plaintiff's answer choice would have been correct. *See* Defs.' Am. Opp'n to Mot. J. Agency R. at 12. Given the question's incorrect use of the delivery term "FOB," it was unreasonable for the Assistant Secretary to affirm Customs' denial of Plaintiff's appeal of this question. Therefore, "[b]ecause of faulty drafting, [P]laintiff's answer must be considered correct or the question must be voided." *Carrier v. United States*, 20 CIT 227, 232 (1996)(holding that the official answer could not be considered more correct than the plaintiff's response).

### 2. Question 62

 Question 62 tests an examinee's knowledge relating to record retention re-quirements. The question reads as follows:

Which of the following records is a broker NOT required to retain at his/her place of business?

A) accounting records as they pertain to the broker's financial transactions.

B) copies of entries filed for clients.

C) powers of attorney authorizing the broker to conduct customs business for clients.

D) his/her permit to conduct business.

E) a statement identifying employees authorized to transact customs business on the broker's behalf.

The official answer to question 62 is (E). Plaintiff selected (D) as his answer.

Defendants reason that (E) is the correct answer because various sections of the regulations specify that certain records must be maintained at the customs broker's place of business. *See* Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 14. As background, Defendants point to the definition of "records" set out in 19 C.F.R. § 111.1 (1997). *See id.* The provision identifies records as "those documents identified in § 162.1a of this chapter and kept as provided in § 162.1b of this chapter." 19 C.F.R. § 111.1. Section 162.1a(a)(1997),[6] in turn, provides a general description of documents that constitute "records," while § 162.1b(a)(1997)[7] speci-

**6.** 19 C.F.R. § 162.1a(a) provides:

(a) ... "Records" means:
(1) Statements, declarations, books, papers, correspondence, accounts, technical data, automated record storage devices (e.g., magnetic discs and tapes), computer programs necessary to retrieve information in a usable form, and other documents which:
 (i) Pertain to any importation, or to the information contained in the documents required by law or regulation under the Tariff Act of 1930, as amended, in connection with the entry of merchandise;
 (ii) Are of the type normally kept in the ordinary course of business; and
 (iii) Are sufficiently detailed:
 (A) To establish the right to make entry,

(B) To establish the correctness of an entry,
(C) To determine the liability of any person for duties and taxes due, or which may be due, the United States,
(D) To determine the liability of any person for fines, penalties, and forfeitures, and
(E) To determine whether the person has complied with the laws and regulations administered by the Customs Service; and
(2) Any other documents required under laws or regulations administered by the Customs Service.

**7.** 19 C.F.R. § 162.1b(a) provides,

fies the parties who are required to keep records.

Defendants cite specific regulations to demonstrate that answer choices (A), (B), (C), and (D) are incorrect. For example, Defendants point to 19 C.F.R. § 111.21 (1997) to support their conclusion that choices (A) and (B) are incorrect. *See* Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 15–16. That regulation states,

> Each broker shall keep current in a correct, orderly, and itemized manner records of account reflecting all his *financial transactions* as a broker. He shall keep and maintain on file a *copy of each entry* made by him with all supporting records, except those documents he is required to file with Customs, and copies of all his correspondence and other records relating to his Customs business.

19 C.F.R. § 111.21 (emphasis added). Brokers are thus required to retain accounting records as they pertain to the broker's financial transactions (answer choice (A)), as well as copies of entries filed for clients (answer choice (B)).

Moreover, Defendants cite 19 C.F.R. § 111.23(a)(1)(1997) to support its finding that these records must be retained at the broker's "place of business." Section 111.23 provides that "[t]he records, as defined in § 111.1(f), and required by § 111.21 ... to be kept by the broker, shall be retained at the *port*, unless notification of centralized accounting records is given under paragraph (e) of this section, or notification is provided by electronic entry filers ...." (Emphasis added). Defendants presumably equate the term "port" with the broker's place of business. Because 19 C.F.R. § 111.19 (1997) requires a license applicant to maintain a "place of business at the port where the application is filed," this inference is reasonable.

Next, Defendants refer to 19 C.F.R. § 141.46 (1997) to eliminate answer choice (C) as the correct answer to question 62. *See* Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 15–16. Section 141.46 provides:

> Before transacting Customs business in the name of his principal, a customhouse broker is required to obtain a valid power of attorney to do so. He is not required to file the power of attorney with a port director. Customhouse brokers shall *retain powers of attorney with their books and papers*, and make them available to representatives of the Department of the Treasury ....

(Emphasis added). Since this provision requires brokers to retain powers of attorney authorizing the broker to conduct customs business for clients (answer choice (C)), Defendants conclude that answer choice (C) is incorrect. Presumably, Defendants infer that requiring the broker to retain the power of attorney with her "books and papers" is equivalent to requiring the broker to retain the document at her place of business. This inference is reasonable.

Finally, Defendants cite 19 C.F.R. § 111.43 (1997) to illustrate that answer choice (D) is incorrect. *See* Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 16. Section 111.43 requires each licensee to "display its permit in the principal office within the district so it may be seen by anyone transacting business in the office. Photocopies of the permit shall be conspicuously posted in each branch office within the district. Photocopies of the license also may be posted." Since this provision requires a broker to retain her permit to conduct business, or copy thereof, at her principal office and at all branch offices, Defendants conclude that answer choice (D) is incorrect.

Having eliminated answer choices (A), (B), (C), and (D), Defendants conclude that

(a) ... Any owner, importer, consignee, or their agent who imports, or knowingly causes to be imported, any merchandise into the Customs territory of the United States, shall make and keep records as defined in § 162.1a(a).

answer choice (E) is the correct answer to question 62. *See* Defs.' Am. Mem. Opp'n to Mot. J. Agency R. at 16. As further support for answer (E), Defendants cite 19 C.F.R. § 111.3(b)(2)(1997).[8] *See id.* This regulation requires the broker to file the authorization statement identified in answer (E) with Customs, rather than retain it herself. *See* 19 C.F.R. § 111.3(b)(2). Additionally, pursuant to 19 C.F.R. § 111.21, documents required to be filed with Customs do not have to be retained by the broker. Therefore, Defendants conclude that a broker is not required to retain such an authorization at her place of business. *See* Defs.' Am. Mem. Opp'n Mot. J. Agency R. at 16.

Plaintiff selected "D" as the answer to question 62. He asserts that question 62 has no answer, and, in the alternative, that the question has more than one correct answer. *See* Pl.'s Mot. J. Agency R. at 3.

Plaintiff first argues that, "[i]f [§ 111.3(b)(2)] is intended to support the conclusion that (E) is the correct answer, it requires one to assume that documents filed with Customs need not be retained at the broker's place of business." *See id.* at 5. To support his argument, however, Plaintiff relies on regulations that were not in force when he took the customs broker examination. As noted above, Plaintiff took the April 1998 examination, which instructs examinees to refer to the customs regulations revised as of April 1, 1997. Instead, Plaintiff cites the 1998 version of 19 C.F.R. § 111.21 (effective on July 16, 1998). The amended version of § 111.21 indeed does not state that brokers do not have to retain documents filed with Customs. The 1997 version of 19

C.F.R. § 111.21, however, specifically states that documents required to be filed with Customs do not have to be retained by the customs broker. Therefore, Plaintiff's first argument is not persuasive.

Plaintiff next argues that the question has more than one correct answer. As Plaintiff points out, *see* Pl.'s Mot. J. Agency R. at 7, 19 C.F.R. § 111.23(a)(1) indicates that the place of retention may be other than the broker's place of business. Specifically, a broker may keep the records required to be retained by § 111.21 at a centralized storage location upon providing written notice to Customs. *See* 19 C.F.R. § 111.23(a)(1) & (e). Accordingly, the regulations indicate that at least answer choices (A) and (B) (accounting records and entries) are also technically correct responses to question 62 because, pursuant to § 111.23(a)(1) & (e), these documents are not necessarily required to be retained by the broker at her place of business. Defendants do not respond to this argument. In fact, Defendants acknowledge that, "pursuant to §§ 111.21[and] 111.23(a)(1) . . . of the customs regulations, the . . . documents are to be retained at the broker's place of business at the port *or an approved centralized location* . . . ." Defs.' Am. Mem. Opp'n Mot. for J. Agency R. at 16 (emphasis added).

■ Thus, technically, answer choice (E) is not the only correct response to question 62. Unlike question 17, however, Plaintiff's response to question 62, (D), is wrong in any case because the applicable regulations clearly require a customs broker to display her permit, or copies thereof, in all her places of business.[9] *See* 19

---

**8.** 19 C.F.R. § 111.3 provides,

A license is not required to engage in the following transactions with the Treasury Department or any representative thereof: . . . .
(b) As employee of brokers. An employee of a broker, acting solely for his employer, is not required to be licensed where: . . .

(2) Authorized to transact other business. The broker has filed with the port director a statement identifying the employee as authorized to transact business on his behalf. Such statement shall also be filed at each port within the district where the broker wishes the employee to act for him.

**9.** Even Plaintiff concedes that, under its second argument, answer (D) would still be in-

C.F.R. § 111.43. Nevertheless, the Court cannot conclude as a matter of law that answer (E) is the only correct answer to question 62. Therefore, this matter must be remanded to the Assistant Secretary for reconsideration to determine the appropriate disposition of a question that, although answered incorrectly by the test-taker in any event, contains more than one correct answer.

## Conclusion

For the foregoing reasons, the Court finds that the Assistant Secretary unreasonably affirmed Customs' denial of Plain-

---

correct. *See* Pl.'s Mot. J. Agency R. at 7. Although Plaintiff in a footnote suggests that answer (D) *could* be correct if one interpreted "principal office" as being distinct from "place of business," *see id.* at n. 6, it is rea-

tiff's appeal as to questions 17 and 62. Accordingly, this case is remanded. Plaintiff's answer to question 17 must either be deemed correct or the question must be voided. If the treatment of question 17 results in a passing grade for Plaintiff, question 62 need not be addressed.

So ordered.

---

sonable for Customs to infer that the two phrases are equivalent.