**HUNTINGTON HOSPITAL, Long Island College Hospital; Nassau County Medical Center; New York Methodist Hospital; Northern Westchester Hospital Center; Phelps Memorial Hospital Center; St. Vincent's Hospital of New York; Sound Shore Medical Center, formerly known as New Rochelle Hospital; Southampton Hospital; and Staten Island University Hospital, formerly known as Richmond Memorial Hospital, Plaintiffs,**

v.

**Donna E. SHALALA, in her official capacity as Secretary of the United States Department of Health and Human Services; and Empire Blue Cross and Blue Shield, Defendants.**

**Good Samaritan Hospital; New York Methodist Hospital; Northern Westchester Hospital Center; Phelps Memorial Hospital Center; St. Vincent's Hospital of New York; and Staten Island University Hospital, formerly known as Richmond Memorial Hospital, Plaintiffs,**

v.

**Donna E. Shalala, in her official capacity as Secretary of the United States Department of Health and Human Services; and Empire Blue Cross and Blue Shield, Defendants.**

No. CV 97–1811(ADS),
CV 97–5395(ADS).

United States District Court,
E.D. New York.

Feb. 23, 2001.

Garfunkel, Wild & Travis, P.C. by Frederick I. Miller, Michael J. Keane, Roy W. Breitenbach, Great Neck, NY, for Plaintiffs.

Loretta Lynch, U.S. Atty. by Paul Kaufman, Asst. U.S. Atty., Brooklyn, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This dispute arises out of reimbursement allegedly due to Huntington Hospital, Long Island College Hospital, Nassau County Medical Center, New York Methodist Hospital, Northern Westchester Hospital Center, Phelps Memorial Hospital Center, St. Vincent's Hospital of New York, Sound Shore Medical Center, Southampton Hospital, Staten Island University Hospital, and Good Samaritan Hospital (collectively the "Hospitals" or the "plaintiffs"), under the Medicare Statute 42 U.S.C. § 1395, et. seq. The narrow issue presented here is whether the Secretary of Health and Human Services (the "Secretary" or a "defendant") exceeded her statutory authority when she promulgated the regulation that set September 30, 1982, through September 20, 1983, as the base year for the hospital specific portion of the blended payment rate that was to be used in the four-year transition from a cost-based Medicare hospital reimbursement system to a prospective payment system.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

Part A of the Medicare Program, 42 U.S.C. § 1359c et. seq., authorizes payment for in-patient hospital services to eligible aged and disabled persons. Providers of these services are reimbursed by fiscal intermediaries designated by the provider and the Secretary. *See* 42 U.S.C. §§ 1359h –1359i.

Prior to October 1, 1983, the Medicare Program reimbursed hospitals based on a "retrospective, reasonable cost system. At the end of each fiscal year, hospitals reported the total costs for which they sought reimbursement." *Rye Psychiatric Hosp. Ctr., Inc. v. Shalala,* 52 F.3d 1163, 1165 (2d Cir.1995). The Medicare Program reimbursed the hospitals for the reasonable cost of covered services, excluding charges that ·the Secretary found were "unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). This method of reimbursement provided little incentive for hospitals to reduce or contain costs and shifted the burden of cost increases from the hospitals to the federal government. *See Rye Psychiatric,* 52 F.3d at 1165; *Episcopal Hosp. v. Shalala,* 994 F.2d 879, 881 (D.C.Cir.1993); *Tucson Medical Ctr. v. Sullivan,* 947 F.2d 971, 973–74 (D.C.Cir. 1991) (noting that under the reasonable cost system, "[t]he more the [hospitals] spent, the more they were reimbursed").

As a consequence, and in an attempt to control Medicare costs, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). Pub.L.No. 97– 248, §§ 101–128, 96 Stat. 324 (1982) (codified at scattered sections of 42 U.S.C.). TEFRA changed the Medicare Program by imposing limits on the rate Part–A reimbursements could be increased. Un-

der TEFRA, a provider's rate of reimbursement is based on its "target amount," or the maximum amount a provider can be reimbursed per year. *See* 42 U.S.C. § 1395ww(b)(3); *Rye Psychiatric,* 52 F.3d at 1166. A provider's target amount for its first "cost reporting period" for which subsection (b)(3)(A) was in effect consists of the provider's "allowable costs" for the preceding year. *See* 42 U.S.C. § 1395ww(b)(3)(A). The provider's target amount for each subsequent year is calculated by multiplying the preceding year's target amount by a percentage prescribed by the legislature and based on "an index of appropriately weighted indicators of changes in wages and prices." 42 U.S.C. § 1395ww(b)(3)(B). If a hospital's operating costs for the cost reporting period are less than its target amount, it receives its operating costs plus a bonus. *See id.* § 1395ww(b)(1)(A). However, if the hospital's operating costs exceed its target amount, it is reimbursed only to the extent of its target amount. *See id.* § 1395ww(b)(1)(B).

The Court of Appeals described the effect TEFRA's target amount has on hospitals' Medicare reimbursements:

> How fully a TEFRA hospital is reimbursed from year to year thus depends on (1) how representative its base period is of its actual total costs in the relevant year, and (2) how closely the Congressionally fixed percentage increase mirrors any increase in the hospital's costs.... Because the base period is the starting point for the determination of all subsequent ceilings, changing the base period affects all future target amount calculations of the hospital, not merely that of a particular year.

*Rye Psychiatric,* 52 F.3d at 1166.

On October 1, 1983, Congress replaced this retroactive reimbursement of reasonable costs with the Prospective Payment System ("PPS"). *See* Pub.L.No. 98–21, §§ 601–606, 97 Stat. 65, 149 (1983) (codified as amended primarily at 42 U.S.C. §§ 1395–1395ww). Congress' intent was "to reform the financial incentives hospitals face, promoting efficiency in the provision of services by rewarding cost-effective hospital practices." H.R.Rep. No. 25, 98th Cong., 1st Sess. 132 (1983), *reprinted in* U.S.C.C.A.N. 219, 351. The PPS established 470 "diagnosis related groups" ("DRGs") and set a fixed rate of reimbursement for each DRG. 42 U.S.C. § 1395ww(d)(4). "DRG cost schedules are generated from anticipated national and regional average costs for the treatment of particular illnesses." *Rye Psychiatric,* 52 F.3d at 1167 (citing 42 U.S.C. § 1395ww(d)(2)(D) (1983)). The PPS promotes efficiency and treatment-cost reduction by allowing the hospitals to retain the difference between the hospital's actual operating cost and the DRG while forcing the hospitals to absorb operating costs in excess of the DRG. *See Rye Psychiatric,* 52 F.3d at 1167 n. 4 (citing H.R.Rep. No. 25, 98th Cong., 1st Sess. 132 (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 351; S.Rep. No. 23, 98th Cong., 1st Sess. 47 (1983), *reprinted in* 1983 U.S.C.C.A.N. 143, 187); *New York University Medical Ctr. v. Shalala,* 1996 WL 636128 (S.D.N.Y.1996).

Recognizing that implementation of the PPS would create a financial hardship for many hospitals, Congress created a four-year transition period between the reasonable cost system and the PPS, *see* 42 U.S.C. § 1395ww(d), that was designed to "minimize disruptions that might otherwise occur because of a sudden change in reimbursement policy." S.Rep. No. 23, 98th Cong., 1st Sess. 53 (1983), *reprinted in* 1983 U.S.C.C.A.N. 143, 193; H.R.Rep. No. 25 136, 98th Cong., 1st Sess., *reprinted in* 1983 U.S.C.C.A.N. 143, 355. During the transition period, the federal government reimbursed hospitals according to a "blended" rate, which had two components. The first component, the hospital-specific portion ("HSP"), was a percentage of "the hospital's target amount for the cost reporting period (as defined in subsection (b)(3)(A) of this subsection)." 42 U.S.C. § 1395ww(d)(1)(A)(i)(I), (ii)(I). The Secre-

tary promulgated a regulation that defined the HSP base year for the transition period as the hospital's allowable costs "for the twelve month or longer cost reporting period ending on or after September 30, 1982, and before September 30, 1983." 42 C.F.R. § 412 .71(a).

The second component of the blended rate was the "federal" portion, which was a percentage of the DRG prospective payment rate. *See* 42 U.S.C. § 1395ww(d)(1)(A)(i)(II), (ii)(II). Over the course of the four-year transition period, which began on October 1, 1983, the federal portion of the blended rate became progressively larger while the HSP portion became progressively smaller until the government was reimbursing hospitals solely on the basis of the PPS. *See id.* § 1395ww(d)(1)(C).

### B. Factual Background

Most hospitals throughout the country became subject to the PPS and its transition period as of their first cost reporting period that began on or after October 1, 1983. However, hospitals in New York State participated in a Medicare demonstration project during calendar years 1984 and 1985, and, therefore, the Secretary waived the applicability of the transition period blended rate to New York hospitals for those years.

The plaintiffs participated in the waiver and, thus, did not begin participating in the PPS transition period until January 1, 1986. They continued to do so until the transition was complete on or about February 21, 1988. During these years, the plaintiffs filed annual cost reports for Medicare reimbursement with their fiscal intermediary, Empire Blue Cross and Blue Shield ("Empire" or a "defendant"), which made final reimbursement determinations that were memorialized in notices of program reimbursements ("NPRs"). As per 42 C.F.R. § 412.71(a), Empire used the plaintiffs' respective cost reporting periods that ended after September 30, 1982, and before September 30, 1983, to calculate the HSP portion of the plaintiffs' blended rate. The resulting sums were less than the various amounts requested by the plaintiffs.

The plaintiffs appealed Empire's final determinations to the Provider Reimbursement Review Board ("PRRB" or the "Board"), contending that Empire should have used cost reporting periods that ended in 1985, not those that ended in 1982 or 1983, as the base period for determining the HSP portion of their blended rate. On February 6, 1997, the PRRB granted the plaintiffs' request for expedited judicial review on the ground that the Board did not have the authority to decide the legal question presented by the plaintiffs, namely, the validity of the transition period base year regulation.

The plaintiffs filed two lawsuits, one in the Southern District of New York, and one in this Court. On September 11, 1997, the parties stipulated to consolidate the actions, and the Southern District case was transferred to this Court. Presently before the Court are the plaintiffs' motion for judgment on the pleadings and the defendants' cross-motion for judgment on the pleadings, both of which are brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

### II. *DISCUSSION*

### A. The Dispute

This case involves a question of statutory interpretation. The plaintiffs contend that the Secretary exceeded her statutory authority in promulgating the regulation that set the "cost reporting period ending on or after September 30, 1982 and before September 30, 1983" as the base year for the HSP portion of the blended rate, *see* 42 C.F.R. § 412.71(a), because according to 42 U.S.C. §§ 1395ww(d), 1395ww(b)(3)(A), the plaintiffs' base year for the HSP portion of their blended rate should have been 1985.

The plaintiffs assert that the plain meaning of sections 1395ww(d)(1)(A) and 1395ww(b)(3)(A) support their claim. In particular, the plaintiffs point out that section 1395ww(d)(1)(A) defines a hospital's HSP as a percentage of "the hospital's target amount" as the term "target amount" is defined in subsection (b)(3)(A). The plaintiffs contend that subsection (b)(3)(A), which is part of TEFRA defines a hospital's base-year target amount as its 12–month cost reporting period immediately preceding its being subject to TEFRA, as opposed to the first cost reporting period for which TEFRA was in effect. The plaintiffs further assert that they did not become subject to TEFRA until January 1, 1986, and thus, their target amount consists of their allowable costs for 1985.

According to the plaintiffs, the Secretary exceeded her statutory authority in adopting 42 C.F.R. § 412.71(a), because that regulation sets the base year for their HSP target amount as the year preceding the cost reporting period ending on or after September 30, 1982, and before September 30, 1983, see 42 C.F.R. § 412.71(a), but 42 U.S.C. § 1395ww(b)(3)(A), sets the base year for their TEFRA target amount at 1985. According to the plaintiffs, a hospital's transition-period base year must be identical to its TEFRA base year, because the transition period statute, see id. § 1395ww(d)(1)(A), expressly refers to the TEFRA definition of target amount, see id. § 1395ww(b)(3)(A).

To support their assertions, the plaintiffs refer to 42 C.F.R. § 413.40, which they contend interprets subsection (b)(3)(A) in a manner contrary to 42 C.F.R. § 412.71(a). In particular, they argue that 42 C.F.R. § 413.40 interprets the language, "the first such reporting period for which this subsection is in effect," in subsection (b)(3)(A) to mean the hospital's first cost reporting period that is subject to the TEFRA, while 42 C.F.R. § 417.21(a) interprets the same language to mean the first cost reporting period after October 1, 1982, which is the date that subsection (b)(3)(A) became effective.

In further support of their claim that 42 C.F.R. § 412.71(a) is arbitrary and capricious, the plaintiffs refer to comments made by the Secretary during the notice and comment process. In particular, the plaintiffs specifically refer to statements made by the Secretary in 1986, which they claim indicate that she intended that hospitals which participated in state demonstration projects to have a base year that is the cost reporting period preceding the year that those hospitals became subject to a rate-of-increase ceiling.

Lastly, the plaintiffs request that if the Court does not invalidate 42 C.F.R. § 412.71(a) as arbitrary, capricious, and an exercise of the Secretary's authority in excess of that permitted by statute, the Court should exempt the plaintiffs from the provisions of the regulation to ensure that they receive identical base years under TEFRA and the HSP, which the plaintiffs contend is the result Congress intended.

Notably, the defendants agree that the transition period statute; 42 U.S.C. § 1395ww(d), explicitly refers to subsection (b)(3)(A) to define "target amount" as that term is used in the transition period statute. However, the defendants contend that the Secretary merely rephrased the plain language of subsection (b)(3)(A) when she promulgated 42 C.F.R. § 412.71(a). In particular, the defendants assert that subsection (b)(3)(A) defines "target amount" as a hospital's allowable costs for the year preceding the "first cost reporting period for which this subsection is in effect." The defendants argue that because subsection (b)(3)(A) was "in effect" as of October 1, 1982, a hospital's initial target amount consists of its allowable operating costs for the year preceding the cost reporting period that began on or after October 1, 1982.

According to the defendants, 42 C.F.R. § 412.71(a) reaches the same result. The

defendants contend that the regulation provides that the initial target amount for the HSP portion of the blended rate consists of the hospital's allowable costs for the year preceding the cost reporting period that ends on or after September 30, 1982, and before September 30, 1983. The defendants claim, therefore, that the transition-period base-year regulation represents a rephrasing of the plain language of subsection (b)(3)(A) and, thus, is a proper exercise of the Secretary's rulemaking authority. The defendants further contend that even if the language of subsection (b)(3)(A) is ambiguous, the Court should give deference to the Secretary's interpretation of that subsection, because her interpretation is reasonable.

## B. The Standard of Review

The Medicare statute provides for judicial review of the Secretary's actions, *see* 42 U.S.C. § 1395oo(f)(1), and according to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 801 et. seq., a court may set aside an agency's final decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 510, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) (APA standard "is incorporated by" the judicial review section of the Social Security Act).

■ In evaluating an agency's interpretation of a statute that it administers, a court must first ask "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If Congress' intent is ambiguous, then the court must ask "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 842–43, 104 S.Ct. at 2781–82. In making this second inquiry, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construc-

tion, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11. Rather, where Congress expressly delegates authority to an administrative agency "to elucidate a specific provision of the statute by regulation . . . [the] regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782.

## C. Analysis

■ Applying these standards to the case at hand, the Court first asks whether the plain language of section 1395ww(b)(3)(A) indicates Congress' intent to define the term "target amount" as a hospital's allowable operating costs for the 12–month period preceding the hospital's first cost reporting period that is subject to TEFRA. The Court notes that Congress did not use language such as, "in the case of the first such reporting period for which a hospital is subject to this subsection," or, "in the case of the first such reporting period for which this particular subsection is in effect for the hospital," when it drafted subsection (b)(3)(A). Rather, the section specifically states, "in the case of the first such reporting period for which this subsection is in effect." Thus, the plain language of the statute suggests that Congress did not intend for the target amount to consist of operating costs for the year preceding the year that hospitals were subject to the section (b)(3)(A), but intended the target amount to consist of operating costs for the year preceding the year that the subsection (b)(3)(A) became effective. The Court concludes that if Congress had intended the target amount to refer to the hospital's operating costs for the year preceding the year that the hospital became subject to section (b)(3)(A), it would have said so explicitly.

■ Even if the Court were to consider other interpretations, the plaintiffs still cannot prevail. Under the second step of

*Chevron,* the Court asks only "whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782; *see Good Samaritan Hospital Regional Medical Ctr. v. Shalala,* 85 F.3d 1057, 1060 (2d Cir.1996). " 'The view of the agency charged with administering the statute is entitled to considerable deference.' " *Young v. Community Nutrition Institute,* 476 U.S. 974, 981, 106 S.Ct. 2360, 2365, 90 L.Ed.2d 959 (1986) (quoting *Train v. Natural Resources Defense Council, Inc.,* 421 U.S. 60, 75, 87, 95 S.Ct. 1470, 1480, 1485, 43 L.Ed.2d 731 (1975)). Further, to sustain an agency's interpretation of a statute, the reviewing court "need not find that it is the only possible construction that [the agency] might have adopted but only that [the agency's] understanding of this very 'complex statute' is a sufficiently rational one to preclude a court from substituting its judgment for that of [the agency]." *Community Nutrition,* 476 U.S. at 981, 106 S.Ct. at 2365. Thus, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2782.

The Court finds that the Secretary's interpretation of 42 U.S.C. § 1395ww(d) and 42 U.S.C. § 1395ww(b)(3)(A) is sufficiently rational to preclude it from substituting its own judgment for that of the Secretary. Initially, it is undisputed that section 1395ww(d)(1)(A) defines the HSP as a percentage of the hospital's target amount as the term "target amount" is defined in subsection (b)(3)(A). Subsection (b)(3)(A) states that "target amount" means, "in the case of the first such reporting period for which this subsection is in effect, the allowable operating costs ... for the preceding 12–month cost reporting period," 42 U.S.C. § 1395(b)(3)(A)(i), and "in the case of a later reporting period, the target amount for the preceding 12–month cost reporting period, increased by the applicable percentage increase" 42 U.S.C. § 1395(b)(3)(A)(ii).

The Secretary interpreted the definition of target amount in subsection (b)(3)(A) as the allowable operating costs "for the 12–month or longer cost-reporting period ending on or after September 30, 1982 and before September 30, 1983." 42 C.F.R. § 412.71(a). This regulation interprets the words "in the case of the first such reporting period for which this subsection is in effect," to mean the first reporting period after the statute became effective. This interpretation clearly is a permissible construction of the statute, and therefore, the Court will not substitute its own judgment for that of the agency. *Community Nutrition,* 476 U.S. at 981, 106 S.Ct. at 2365.

In addition, 42 C.F.R. § 412.71(a) achieves Congress' goal that a hospital's HSP be calculated according to the hospital's target amount as that term is defined in subsection (b)(3)(A). *See* 42 U.S.C. § 1395ww(d)(1)(A). For example, a hospital that has 12–month cost reporting periods that begin on September 1 of each year has a TEFRA target amount consisting of the allowable costs from September 1, 1982, through September 1, 1983. This is because under subsection (b)(3)(A), the hospital's target amount consists of its allowable costs in the year preceding the first cost reporting period after October 1, 1982, the date the subsection was in effect. That hospital's HSP is determined according to the same cost reporting period as was used to determine the hospital's TEFRA target amount, because 42 C.F.R. § 412.71(a) requires that the transition period base year costs consist of the allowable costs for the cost reporting period ending on or after September 30, 1982, and before September 30, 1983. In this case, that reporting period would be the September 1, 1982, through September 1, 1983, cost reporting period. Thus, 42 C.F.R. § 412.71(a) is a permissible construction of 42 U.S.C. § 1395ww(d)(1)(A) and 42 U.S.C. § 1395ww(b)(3)(A) because it achieves Congress' intent that a hospital's transition period base year costs be

determined according to the target amount formula set forth in section 1395(b)(3)(A).

That 42 C.F.R. § 412.71(a) may not be the only permissible construction of subsection (b)(3)(A) does not render the regulation arbitrary, capricious, or manifestly contrary to the statute. *See Community Nutrition,* 476 U.S. at 981, 106 S.Ct. at 2365. As stated above, where, as here, the Secretary's construction of the statute is reasonable, the Court will not substitute its own interpretation. *See Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2782.

■ The plaintiffs argue that the Secretary's interpretation of subsection (b)(3)(A) should not be accorded deference because 42 C.F.R. § 413.40(b) and two comments made by the Secretary in 1986 allegedly indicate that the Secretary set forth an interpretation of (b)(3)(A) that is inconsistent with that espoused in 42 C.F.R. § 412.71(a). The Court is unpersuaded. Assuming that 42 C.F.R. § 413.40(b) and the Secretary's 1986 comments evidence an interpretation of (b)(3)(A) that is inconsistent with the interpretation that is set forth in 42 C.F.R. § 412.71(a), those inconsistencies do not alter the outcome of this case. Although less deference should be accorded to administrative interpretations that lack consistency, an agency is not locked into the first interpretation it embraces. *See Sacred Heart Medical Center v. Sullivan,* 958 F.2d 537, 544 (3d Cir. 1992). Indeed, "where the agency's interpretation of a statute is at least as plausible as competing ones, there is little, if any, reason not to defer to its construction." *Good Samaritan Hospital v. Shalala,* 508 U.S. 402, 417, 113 S.Ct. 2151, 2161, 124 L.Ed.2d 368 (1993). Thus, the Court finds that to the extent that the plain language of (b)(3)(A) is ambiguous, there is no reason not to defer to the Secretary's permissible construction of the statute in this particular case.

■ Furthermore, the Court finds no reason to exempt the plaintiffs from the application of 42 C.F.R. § 412.71(a) and provide the plaintiffs with a base year of 1985. Neither Congress nor the Secretary provided the relief the plaintiffs now request from this Court. Although 42 U.S.C. § 1395ww(d) sets forth the specifics of the PPS transition period, it does not contain a provision exempting hospitals, such as the plaintiffs that participated in state demonstration projects during part of the four-year transition period, from regulations that apply to all other hospitals making the transition from the reasonable cost system to PPS. *See* 42 U.S.C. § 1395ww(d)(1)(B). Similarly, the Secretary did not promulgate regulations exempting hospitals that were participating in state demonstration projects ending on December 31, 1995, from the application of 42 C.F.R. § 412.71(a), nor did she provide that those hospitals be given a base year of 1985 for the HSP of the blended rate. Absent a congressional statute or an agency regulation indicating an intent to exempt the plaintiffs from the application of 42 C.F.R. § 412.71(a), the Court declines to grant such equitable relief.

### III. *CONCLUSION*

Having reviewed the parties submissions it is hereby

**ORDERED**, that the plaintiffs motion for judgment on the pleadings is **DENIED** and it is further

**ORDERED**, that the defendants motion for judgment on the pleadings dismissing the complaints is **GRANTED** and it is further

**ORDERED**, that the Clerk of the Court is directed to close these cases.

**SO ORDERED.**