SLIP OP. 06-156

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES, | |
| Plaintiff, | **BEFORE: CARMAN, JUDGE** |
| v. | Court No. 04-00650 |
| UPS CUSTOMHOUSE BROKERAGE, INC., dba UPS SUPPLY CHAIN SOLUTIONS, INC., | |
| Defendant. | |

[Defendant's motions to certify order for interlocutory appeal, to stay proceedings, and for leave to file a reply brief are granted. Defendant's motion for oral argument is denied.]

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Melinda D. Hart, Nancy Kim), Edward Greenwald, Department of Homeland Security, Bureau of Customs and Border Protection, Of Counsel, for Plaintiff.

Akin, Gump, Strauss, Hauer & Feld, LLP (Lars-Erik Hjelm, Lisa W. Ross, and Thomas J. McCarthy), Washington, D.C., for Defendant.

Tompkins & Davidson, LLP (Laura Siegel Rabinowitz), New York, New York, for Amicus (National Customs Brokers & Freight Forwarders Association of America, Inc.).

October 19, 2006

## OPINION & ORDER

**CARMAN, JUDGE:** This matter is before this Court on Defendant's Motion to Amend and

Certify Order for Interlocutory Appeal and for Stay of the Proceeding Pending Appeal

("Defendant's Motion to Certify"). Plaintiff filed a response to Defendant's Motion to Certify in

Plaintiff's Opposition to Defendant's Motion to Amend and Certify Order for Interlocutory

Appeal and for Stay of the Proceeding Pending Appeal ("Plaintiff's Response").  Thereafter,

Defendant filed Defendant's Motion for Leave to File a Reply to Plaintiff's Opposition to

Defendant's Motion for Amendment and Certification of Order for Interlocutory Appeal and

Defendant's Motion for Oral Argument ("Defendant's Reply").  This Court, having considered

all of the papers and arguments contained therein, after due deliberation, and for the reasons set

forth herein, grants Defendant's Motion to Certify, together with Defendant's motions to stay

proceedings and for leave to file a reply brief.  The parties having ably and clearly set forth their

arguments in their papers this Court denies Defendant's motion for oral argument.


### PROCEDURAL HISTORY

The factual and procedural history of this matter are fully addressed in this Court's prior

opinion in this matter, 30 CIT __, Slip Op. 06-98 (June 28, 2006) ("UPS I").  This Court

presumes familiarity with the UPS I opinion.  Briefly, the Bureau of Customs and Border

Protection ("Plaintiff" or "Customs") imposed a series of separate penalties against Defendant,

UPS Customhouse Brokerage, Inc. ("UPS" or "Defendant"), for alleged violations of the

broker's statutory obligation to exercise responsible supervision and control.  The alleged

violations each related to UPS's failure, after repeated counseling and warning by Customs, to

properly classify certain computer equipment.  Defendant remitted payment for three of the

penalty notices but failed to satisfy other penalty notices, and this action ensued.

The substantive legal issue before this Court in UPS I was "the meaning of the statutory

phrase 'a monetary penalty not to exceed $30,000 in total for a violation or violations of' 19

U.S.C. § 1641(d)(1)."[1] UPS I at 27 (quoting section 641(d)(2)(A) of the Tariff Act of 1930, 19

U.S.C. § 1641(d)(2)(A) (2000) ("§ 1641(d)(2)(A)").[2] With regard to this issue, Defendant filed a

motion for summary judgment seeking to limit the amount of penalties to which it would be

subject. This Court, in UPS I, rejected Defendant's claims. Id. at 27-36. Defendant, being

dissatisfied with the Court's holding in UPS I, filed its Motion to Certify. While this Court is

confident in its reasoning and holding in UPS I, the substantive question of law presented therein

nevertheless satisfies the requirements necessary to be certified for interlocutory appeal to the

Court of Appeals for the Federal Circuit ("CAFC"). A Court of International Trade ("CIT")

judge may certify an order not otherwise immediately appealable provided "a controlling

question of law is involved with respect to which there is a substantial ground for difference of

opinion and that an immediate appeal from that order may materially advance the ultimate

termination of the litigation." 28 U.S.C. § 1292(d)(1) (2000) ("§ 1292(d)").


**PARTIES' CONTENTIONS**

**I.        Defendant's Contentions**

Defendant asks this Court to certify the following question for immediate appeal to the

CAFC:

---

[1]Section 641(d)(1)(C) of the Tariff Act of 1930, 19 U.S.C. § 1641(d)(1)(C) (2000), permits Customs to impose a monetary penalty when a broker "has violated any provision of any law enforced by the Customs Service or the rules or regulations issued under any such provision."

[2]Section 1641(d)(2)(A) states in relevant part that "the appropriate customs officer shall serve notice in writing upon any customs broker to show cause why the broker should not be subject to a monetary penalty not to exceed $30,000 in total for a violation or violations of this section."

Whether, under 19 U.S.C. §§ 1641(b)(4)[3] and (d)(2)(A), a Customs broker's alleged failure to exercise responsible supervision and control on the basis of a pattern of entries reflecting the same tariff classification error gives rise to one, or more than one, penalty; and whether there is any limitation on the total penalty amount for the allegedly misclassified entries resulting therefrom.

(Mem. in Supp. of Def.'s Mot. to Amend & Certify Order for Interlocutory Appeal & for Stay of the Proceeding Pending Appeal ("Def.'s Mem.") 1 (footnote added).)  Defendant defines the issue for certification to the CAFC as "whether Plaintiff may assess more than a single penalty for [UPS's] alleged failure to exercise responsible supervision and control over the classification of computer parts."  (Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Amendment & Certification of Order for Interlocutory Appeal ("Def.'s Reply") 3-4.)  According to Defendant, resolution of this issue "goes directly to the heart of whether Defendant is liable for any additional penalties in this case."  (Id. at 4.)

In satisfaction of the first requirement of § 1292(d), Defendant argues that a controlling question of law is presented in UPS I because "[i]f the [CAFC] agrees with Defendant that Plaintiff has alleged a single violation, namely the failure to exercise responsible supervision and control . . . over the classification of computer parts, it follows that only a single penalty is warranted."  (Def.'s Mem. 8.)  If so, Defendant claims that Plaintiff would then be unable to maintain this action because "Customs has already collected a penalty for the alleged failure to exercise responsible supervision and control over the classification of computer parts."  (Id.)  At a minimum, Defendant argues that there is a controlling question of law concerning the

---

[3]Section 641(b)(4) of the Tariff Act of 1930, 19 U.S.C. § 1641(b)(4) (2000), requires a customs broker to "exercise responsible supervision and control over the customs business that it conducts."

maximum amount of penalties Customs may seek through a single penalty notice or multiple

penalty notices.  (Id.)

Next, Defendant claims that the second requirement of § 1292(d)–that there exist a

substantial ground for difference of opinion–is met.  (Id. 8-9.)  Defendant alleges that UPS I

conflicts with an earlier CIT case, United States v. Ricci, 21 CIT 1145, 985 F. Supp. 1145

(1997).  Defendant takes issue with UPS I for distinguishing Ricci because the penalty issued

therein–unlike in the matter before this Court–was the result of an audit by Customs.  (Def.'s

Mem. 9.)  Defendant asserts that the audit provisions of the Customs penalty mitigation

guidelines ("mitigation guidelines") were not invoked in Ricci and, therefore, were not a means

by which to distinguish the case in UPS I.  (Id. at 9.)  Defendant also suggests that this Court

should not have referenced the audit provisions of the mitigation guidelines because they "'do

not have the force of a statute or regulation.'"  (Id. (quoting Ricci, 21 CIT at 1147).)[4]  Defendant

maintains that Ricci established that § 1641(d)(2)(A) does not permit Customs to issue more than

one penalty for more than one violation of a broker's statutory obligations.  (Def.'s Reply 7.)  To

the extent that UPS I and Ricci differ in this regard, Defendant urges that there exists a difference

of opinion ripe for resolution on interlocutory appeal.

In discussing the third requirement of § 1292(d), Defendant postulates that an

interlocutory appeal of UPS I will "expeditiously settle the most significant legal principle at

stake in this dispute."  (Def.'s Mem. at 10.)  Defendant seems to imply that resolution of this

---

[4]This Court duly addressed this argument in UPS I by stating that "[w]hile the mitigation guidelines were not subject to notice and comment, they are 'still entitled to some deference, since [they are] a 'permissible construction of the statute.'" UPS I, Slip. Op. 06-98 at 32 (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

issue also may result in settlement or at least renewed settlement discussions between the parties. (See Id. at 11; Def's Reply 9.)  Defendant further contends that there remain "significant and genuine issues of material fact" regarding Plaintiff's underlying claims.  (Def.'s Mem. 12.) According to Defendant, the "significant expense" of trial concerning the outstanding factual issues might be "avoided completely by certification of immediate appeal."  (Id.)  Defendant insists that "the question for certification goes directly to the issue of [UPS's] liability for additional penalty payments and provides the basis for extinguishing Plaintiff's claim in its entirety."  (Def.'s Reply 8.)  Defendant adds that

> The issue for certification is a pure question of law that requires the [CAFC] to rule on the meaning of the statute and applicable regulations.  As such, it is one that can be decided relatively quickly and which may avoid a lengthy and time-consuming trial for both parties.

(Id. at 9.)  Defendant further asserts "that the alternative to immediate review is to proceed with a costly trial, and possible re-trial, of significant factual issues of liability and penalty exposure that can be entirely avoided by an interlocutory appeal at this stage."  (Id.)  Defendant also notes that the issue raised in UPS I is one of first impression and "has a potentially significant and wide-reaching impact on the entire customs brokerage industry."  (Def.'s Mem. 10.)

With regard to staying the proceedings, Defendant states that neither Plaintiff nor Defendant will be prejudiced by delaying the proceedings pending appeal.  (Def.'s Reply 10.) Defendant notes that Plaintiff proposed that the trial in this matter be rescheduled for March 2007.  (Id.)  According to Defendant, "Plaintiff's contention that a stay of proceedings pending appeal 'would prejudice the Government's interest in a speedy resolution of its claim' is simply baseless."  (Id. (citation omitted).)  Defendant reasons that "Plaintiff's opposition to certification

of this issue–which is more attributable to a desire to avoid potential reversal than by a concern for a speedy resolution of this litigation–that would continue to subject both parties and this Court to significant and unnecessary delay and expense." (Id.)

## II.     Plaintiff's Contentions

Plaintiff opposes the Motion to Certify and argues that the issue decided in UPS I involved a "straightforward application of settled case law . . . to undisputed facts, and an equally straightforward analysis of regulatory provisions under these settled legal principles." (Pl.'s Opp'n to Def.'s Mot. to Amend and Certify Order for Interlocutory Appeal & for Stay of the Proceeding Pending Appeal ("Pl.'s Resp.") 3.) For this reason, Plaintiff argues that no controlling question of law is presented by UPS I. (Id.) Plaintiff also contends that interlocutory appeal of this matter will likely not result in resolution of "two important issues: (1) liability and (2) additional penalty payments." (Id.) Consequently, Plaintiff insists that the issue decided in UPS I "cannot reasonably be regarded as 'controlling,' because interlocutory review would not terminate this action, but merely delay and extend proceedings through piecemeal litigation and appellate review." (Id. at 4.) In addition, Plaintiff complains that "UPS's motion would require the [CAFC] to engage in an unworkable and fact-laden inquiry concerning the purportedly **related** and **unrelated violations** occurring in this action." (Id.)

Next, Plaintiff takes issue with Defendant's assertion that Ricci provides the basis to establish that a difference of opinion exists sufficient to warrant interlocutory appeal. (Id. at 5.) Plaintiff points out that the facts of Ricci differ significantly from the facts of the instant matter. (Id. at 5-6.) Therefore, Plaintiff concurs with UPS I that Ricci is inapposite. (Id. at 6.) In

addition, Plaintiff objects to Defendant's suggestion that an issue of first impression is sufficient to satisfy the "difference of opinion" prong of the requirements for certification of an interlocutory order.  (Id.)

Plaintiff also maintains that Defendant fails to establish the third requirement of § 1292(d)–that certification of UPS I for interlocutory review will advance the instant litigation. (Id. at 7.)  Plaintiff posits that "reversal is extremely unlikely given the settled legal principles applied in this case," that "interlocutory review would not address the issues of liability and any additional penalty payments owed by UPS," and that "UPS identifies no cases pending before the [CIT] or [CAFC] for which immediate resolution of its proposed question for certification will have an effect."  (Id. at 7-8.)  Plaintiff adds that interlocutory appeal will "result in increased delays, greater expense, and the added burden of piecemeal litigation and appellate review" and would be "unlikely to lead to a speedy settlement."  (Id. at 8.)

Lastly, Plaintiff entreats this Court to deny Defendant's request to stay proceedings because "a stay of proceedings would visit extreme hardship on the Government and result in judicial inefficiency."  (Id.)

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1582(1) (2000).

## DISCUSSION

As previously noted, this Court's authority to certify an interlocutory order is provided in 28 U.S.C. § 1292(d)(1).  A parallel provision allows district court judges to certify an order not

otherwise immediately appealable provided the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b) (2000) ("§ 1292(b)").  The text of § 1292(b) and § 1292(d) are substantially similar, and there is very little case law in this court interpreting the requirements of § 1292(d).  Thus, this Court finds cases interpreting § 1292(b) to be instructive in determining whether this Court's order in UPS I and the question presented therein satisfy the prerequisites for interlocutory appeal pursuant to § 1292(d).[5]

The legislative history for § 1292(b) indicates that the provision is to be applied sparingly and "only in exceptional cases where intermediate appeal may avoid protracted and expensive litigation."  Milbert v. Bison Labs., Inc., 260 F.2d 431, 433 (3rd Cir. 1958); see also United States v. Dantzler Lumber & Export Co., 17 CIT 178, 180 (1993) (quoting Milbert for limitation on use of § 1292(d)(1)).  Section 1292(b) "was not intended merely to provide review of difficult rulings in hard cases."  U.S. Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966).  Although this Court's ruling in UPS I was a difficult ruling in a hard case, this Court nevertheless finds–for the reasons set forth herein–that the requirements of § 1292(d) have been met.  Accordingly, this Court certifies the substantive question of law presented in UPS I for interlocutory appeal.

---

[5]This Court notes that prior CIT opinions have also relied upon cases interpreting § 1292(b) when considering requests for interlocutory appeal pursuant to § 1292(d).  See e.g., United States v. Kingshead Corp., 13 CIT 961 (1989).

**I.        Requirements for Interlocutory Appeal**

Section 1292(d) sets forth three requirements for certifying an order not otherwise immediately appealable.  The order must (1) involve a controlling question of law (2) with respect to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(d).  This statutory provision may also be read as delimiting "four statutory criteria:" (1) "there must be a question of <u>law</u>," (2) "it must be <u>controlling</u>," (3) "it must be <u>contestable</u>, and" (4) "its resolution must promise to <u>speed up</u> the litigation."  <u>Ahrenholz v. Bd. of Tr. of Univ. of Ill.</u>, 219 F.3d 674, 675 (7th Cir. 2000) (interpreting § 1292(b)); <u>but cf. Volkswagen of Am., Inc. v. United States</u>, 22 CIT 280, 284, 4 F. Supp. 2d 1259 (1998) (where court delimited only two requirements under § 1292(d)).  All elements must be present before this Court will grant an interlocutory order.  <u>Cf.</u> <u>Ahrenholz</u>, 219 F.3d at 676 ("The criteria are conjunctive, not disjunctive.")  Further, it is irrelevant to this analysis that the issue before the court is novel.  <u>See</u> <u>Krangel v. Gen. Dynamics Corp.</u>, 968 F.2d 914 (9th Cir. 1992) (interpreting § 1292(b)).  With this preface in mind, an analysis of each requirement will be taken in turn.


A.     Question of Law

The first requirement of § 1292(d) is that there be a "question of law."  28 U.S.C. § 1292(d)(1).  A "question of law" is one involving "the meaning of a statutory or constitutional provision, regulation, or common law doctrine."  <u>Ahrenholz</u>, 219 F.3d at 676.  To be a reviewable interlocutory order, the case must turn "on a pure question of law, something the court of appeals [can] decide quickly and cleanly without having to study the record."  <u>Id.</u> at 677.

Because the relevant issue in UPS I was limited to the interpretation of the monetary penalty

language in § 1641(d)(2)(A), a "pure" question of law is presented.


B.       Controlling

The second criteria for certification of an interlocutory order pursuant to § 1292(d) is that

the question of law be "controlling."  28 U.S.C. § 1292(d)(1).  In order for the question of law to

be "controlling," it need not resolve the action in its entirety.  In re Cement Antitrust Litigation,

673 F.2d 1020, 1026 (9th Cir. 1982) (interpreting § 1292(b)).

> Controlling questions of law that fall within this category of dispositive issues
> include the question of whether a claim exists as a matter of law, the question of
> whether a defense that will defeat the claim is available, and questions as to
> subject matter jurisdiction, proper venue, personal jurisdiction, and standing to
> maintain the action."

19 James Wm. Moore et al., Moore's Federal Practice ¶ 203.31[2] (3d ed. 2006) (interpreting

§ 1292(b)).  "A controlling question of law must encompass at the very least every order which,

if erroneous, would be reversible error on final appeal."  Katz v. Carte Blanche Corp., 496 F.2d

747, 755 (3rd Cir. 1974) (interpreting § 1292(b)).  However, the order need not be determinative

of any of the plaintiff's claims on the merits.  Id.  "'[C]ontrolling' means serious to the conduct

of the litigation, either practically or legally."  Id.  "[A]ll that must be shown in order for a

question to be 'controlling' is that resolution of the issue on appeal could materially affect the

outcome of the litigation in the district court."  Cement Antitrust, 673 F.2d at 1026.

This Court does not interpret the "controlling" requirement to be satisfied merely if

resolution of the issue on interlocutory appeal will "appreciably shorten the time, effort, or

expense of conducting litigation."  Id. at 1027.  To interpret the "controlling" requirement in this

manner renders the requirement nugatory. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous." TRW Inc. v. Andrews, 534 U.S. 19, 31 (citations and internal quotations omitted). Because Congress chose to include the additional requirement in § 1292(d) that the "question materially advance the litigation in order for it to be immediately reviewable," the "controlling" requirement and the expediency requirement may not be read as being interchangeable. Cement Antitrust, 673 F.2d 1027.

In this matter, this Court finds that the order issued in UPS I raises a controlling question of law. If this Court's interpretation of § 1641(d)(2)(A) is erroneous, reversible error would result on final appeal. Further, resolution of the interpretation of § 1641(d)(2)(A) is serious to the conduct of this litigation because the statutory provision delimits the extent to which Plaintiff can recover the penalties it has sought to impose upon Defendant. Likewise, a ruling contrary to that rendered in UPS I could affect Plaintiff's ability to prosecute its claims in this matter.

C.      Difference of Opinion

The next statutory requirement that must be satisfied is that there be "a substantial ground for difference of opinion." 28 U.S.C. § 1292(d). Clearly, there is a difference of opinion between Customs and Defendant as to the interpretation of § 1641(d)(2)(A). That difference of opinion gave rise to the present litigation. Further, this Court finds that the ground on which the parties differ in the statutory interpretation is "substantial." Defendant's interpretation could seriously curtail Plaintiff's ability to enforce the laws and regulations applicable to customs brokers. Conversely, and from Defendant's perspective, the interpretation of § 1641(d)(2)(A)

adopted by Customs and affirmed by this Court may expose customs brokers to increased penalties for their failure to satisfy statutory and regulatory obligations.  In addition, as Defendant points out, the interpretation of the penalty maximum in § 1641(d)(2)(A) is one of first impression and "has a potentially significant and wide-reaching impact on the entire customs brokerage industry."  (Def.'s Mem. 10.)  Accordingly, the third requirement of § 1292(d) is satisfied.

####        D.        Advance the Litigation

The final requirement of § 1292(d) is that resolution of the issue on interlocutory appeal "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(d)(1).  If the CAFC accepts the certified question on interlocutory appeal, it may affirm or reverse this Court's opinion in UPS I.  If a reversal is ordered, the CAFC need not do so for the reasons Defendant propounds.  However, if a reversal does occur for either reason[6] argued by Defendant, this litigation will likely come to a swift end.  Decision in Defendant's favor may prevent Plaintiff from pursuing any penalties against Defendant or may significantly reduce the amount of penalties available to Customs from UPS.  On the other hand, if the CAFC were to affirm this Court's order in UPS I, the parties might be spurred to settlement, thereby avoiding the expense and delayed outcome associated with trial or awaiting decision on the pending motion for

---

[6]In UPS I, Defendant argued that either (1) Plaintiff is limited to one-and-only-one penalty notice covering all violations prior to the date the pre-penalty notice was issued; or (2) the aggregate monetary penalty cannot exceed $30,000 for all violations preceding the issuance of the first pre-penalty notice. (Defendant's R. 56 Mot. for Summ. J. 2; Mem. of Law in Supp. of Def.'s Mot. for Summ. J. 13, 21.)  This Court notes that in its Motion to Certify Defendant attempts to soften its position somewhat from that taken in its motion for summary judgment, but that attempt is without import here.  See infra note 8.

summary judgment. Although, as a general principle, this Court does not envision protracted and expensive litigation related to this matter, the Court recognizes Defendant's interest in possibly concluding this matter sooner rather than later. Accordingly, this Court finds that resolution of the interpretation of § 1641(d)(2)(A) will materially advance the ultimate termination of this litigation.

## II.      Applicability of Ricci

Defendant places great emphasis on the relevance of Ricci to this matter. Because this Court does not agree, it will address separately Defendant's efforts to create a precedent where none exists. Despite Defendant's contentions to the contrary, Ricci is not instructive on the issue that was before this Court in UPS I. The Ricci court informs only on the matter of the amount of broker penalty appropriate under the facts of that case for the one pre-penalty/penalty notice Customs issued. This Court has not yet reached consideration of whether the penalty amounts sought by Customs are appropriate. At such point that this Court reaches the appropriateness of the specific penalties Customs is seeking to enforce against UPS will this Court have need to look to Ricci for instruction.

The relevant issue before this Court in UPS I was the application of the statutory cap on penalties as delimited in § 1641(d)(2)(A) to multiple pre-penalty/penalty notices issued by Customs to UPS. Ricci mentioned the § 1641(d)(2)(A) statutory cap on penalties merely in passing. The statutory penalty cap had bearing on the issue before the Ricci court only to the extent that the court was tasked with determining whether the $30,000 maximum penalty was

appropriate given the facts of the case before it.  Thus, this Court stands by its finding in UPS I that Ricci is inapposite.

Defendant claims that the Ricci court was "interpreting" § 1641(d)(2)(A) when the court stated that "[t]he statute limits the amount of monetary penalty the Secretary may impose to $30,000."  (Def.'s Reply 6 (quoting Ricci, 21 CIT at 1147).)  Therefore, Defendant adduces that this Court's holding in UPS I and Ricci are in conflict.  However, Defendant's assertion is without merit.

The Ricci court was not "interpreting" § 1641(d)(2)(A) but rather simply stating the limitation imposed by the statute.  This Court does not dispute the statutory limitation or the Ricci court's restatement thereof.  For the one penalty notice at issue in Ricci, Customs was limited by § 1641(d)(2)(A) to a $30,000 monetary penalty.[7]  This Court differs from Defendant's reading of Ricci in that Defendant wants the $30,000 maximum penalty to cover any and all unspecified violations of a broker's obligations prior to the issuance of the first pre-penalty

---

[7]For this reason, it is irrelevant that the Ricci court did not mention the mitigation guidelines audit provision.  Section XII of the mitigation guidelines states that "[f]rom any one audit the maximum aggregate penalty for all violations discovered is $30,000."  19 C.F.R. Pt. 171, App. C, Sect. XII.C. (2006).  This provision suggests that Customs could issue several penalty notices for several violations (whether related or unrelated) discovered during an audit.  However, Customs would be limited to an aggregate penalty of $30,000 for those several penalty notices.  As Plaintiff points out, "a discussion of both [penalty mitigation] guideline sections in Ricci would have been redundant because, under Ricci's facts, both provisions arrive at the same conclusion of a maximum suggested penalty of $30,000."  (Pl.'s Resp. 6.)

notice.[8]  (See Defendant's R. 56 Mot. for Summ. J. 2; Mem. of Law in Supp. of Def.'s Mot. for

Summ. J. 13, 21.)

However, this Court does not read § 1641(d)(2)(A) or Ricci to support Defendant's

position and held such in UPS I.  Unlike Ricci, this Court did interpret § 1641(d)(2)(A) and held

that Customs is limited to a $30,000 penalty demand for each penalty notice Customs issues

pursuant to the statute.  Again, the Ricci court had no reason to and did not consider

§ 1641(d)(2)(A) in the context of multiple penalty notices because there was only one penalty

notice before that court.

Defendant has unconvincingly attempted to create a "divergence" (Def.'s Reply 7)

between this Court's opinion in UPS I and Ricci where none exists.  While this Court found that

there is "a substantial ground for difference of opinion," 19 U.S.C. § 1292(d), as to the

interpretation of § 1641(d)(2)(A), that difference is not premised on Defendant's reading of

Ricci.


### III.      Other Arguments

Defendant raises a number of other issues that are more appropriate in the context of a

motion for rehearing.  Although Defendant did not file such a motion, the Court will dispose of

the additional arguments here.

---

[8]Defendant adopts a softer position in its brief in support of its Motion to Certify by
conceding "that Customs would [not] be prevented from initiating a separate penalty proceeding
subject to the $30,000 maximum for . . . an unrelated violation that occurred prior to the first pre-
penalty notice issued here."  (Def.'s Mem. 5.)

Defendant contends that it and "similarly-situated" customs brokers are–by the ruling of this Court in UPS I–subject to "unlimited penalty exposure." (Def.'s Reply 9.) If by "similarly-situated" customs brokers, Defendant means other brokers that allegedly flagrantly violate customs laws, ignore direction from and training by Customs, and misstate their own efforts to correct the alleged violations, this Court suggests that these brokers might well be subject to penalties. However, Defendant overstates its case by claiming that it and its ilk are now exposed to unlimited penalties. There is no indication from Customs's past practice that it will aggressively pursue multiple penalties against one broker. However, if it does, this Court remains a check on the imposition of excessive penalties by Customs. See Ricci, 21 CIT at 1146 ("This de novo standard [of review] . . . applies to . . . the amount of the penalty. . . . The Court is directed to determine the amount of penalty, if any, independently of Customs' decision.").

Lastly, Defendant points out that "[b]oth sections [V.D. and XI.B.] of the Mitigation Guidelines pertain to penalties imposed under the authority of the same statute, 19 U.S.C. § 1641(d)(2)(A)." (Def.'s Reply 6.) The mitigation guidelines in section V are for violations of "any law enforced by the Customs Service or the rules or regulations issued under any such provisions" pursuant to 19 U.S.C. § 1641(d)(1)(C). 19 C.F.R. Pt. 171, App. C., Sect. V (2006). The mitigation guidelines in section XI apply to the "failure of a licensed broker to exercise responsible supervision and control over the customs business that it conducts" pursuant to 19 U.S.C. § 1641(b)(4). Id. at Sect. XI. By reference, the mitigation guidelines in section V may be read as applicable also to violations covered by section XI. According to a guidelines note, "[a]ll penalties assessed for violation of 1641(b)(4) shall also cite section 1641(d)(1)(C) as the statute violated in all notices issued to the alleged violator." Id. at XI.A.

Section V of the mitigation guidelines cuts against Defendant's theory that Customs may only issue one penalty for similar violations. Section V.C.4. of the mitigation guidelines instructs that only one penalty should be issued for contemporaneous violations. Id. at Sect. V.C.4. (emphasis added) ("a separate penalty should not be assessed for each non-permitted transaction if numerous transactions occurred contemporaneously" (emphasis added)). The converse of this provision is that multiple penalty notices may issue for non-contemporaneous violations of a broker's obligations. In the matter before this Court, the separate penalties UPS received were for non-contemporaneous violations. Therefore, despite Defendant's protestations to the contrary, it appears that Customs has consistently interpreted § 1641(d)(2)(A) as providing it with the authority to issue multiple penalty notices for multiple violations of a broker's obligations. See UPS I at 32.

## IV.    Stay of Proceedings

Defendant has requested a stay of these proceedings pending the interlocutory appeal of the substantive legal issue addressed in UPS I. Whether to grant the requested stay lies within the discretion of this Court. Application for certification of an interlocutory order will stay proceedings in the CIT only if a judge of the CIT or CAFC orders such. 28 U.S.C. § 1292(d)(3) (2000).[9]

Although this Court is granting the requested stay, it is disappointed by Defendant's effort to discredit Plaintiff's position with regard to Defendant's motion to stay by referencing the

---

[9]Specifically, the statute states that "[n]either the application for nor the granting of an appeal under this subsection shall stay proceedings in the [CIT] . . . unless a stay is ordered by a judge of the [CIT] . . . or by the [CAFC] or a judge of that court." 28 U.S.C. § 1292(d)(3).

newly-established March 2007 trial date. Defendant suggests that Plaintiff's request for a March 2007 trial date is subterfuge. (Def.'s Reply 10.) As Plaintiff explained in its motion to amend the scheduling order, co-counsel will be unavailable during late November and December on a family matter. In addition, Plaintiff's lead counsel represented that she would be engaged in a lengthy trial in October and again in January. Due to these exigencies, Plaintiff requested and Defendant did not oppose a March 2007 trial date.

Under the circumstances, the March 2007 trial date does not indicate to this Court that Plaintiff is unwilling or unable to proceed on the merits of this case. Rather, Plaintiff requested that this Court consider pre-existing commitments when re-scheduling the trial. After considering Plaintiff's motion and given Defendant's explicit consent, this Court granted Plaintiff's motion to amend the scheduling order, which established the March 2007 trial date.

Regardless, this Court finds that staying the proceedings pending resolution of the question certified for interlocutory appeal is in the best interests of the parties and the Court. Given the March 2007 trial date, neither party is likely to be seriously prejudiced by a stay of the proceedings. The issue presented to the CAFC for interlocutory appeal is central to Plaintiff's ability to prosecute its claims against Defendant. It would be inefficient to proceed to judgment on the pending motion for summary judgment or to proceed to trial, only to revisit the entire case in the event of a remand from the CAFC. Accordingly, this Court stays proceedings in this matter for thirty days following the CAFC's final decision concerning the certified question.

### CONCLUSION

For the foregoing reasons, this Court finds that its opinion and order in UPS I involve a

controlling question of law as to which there is a substantial ground for difference of opinion and

that an immediate appeal from the order may materially advance the ultimate termination of the

litigation.  Accordingly, this Court certifies the following question to the Court of Appeals for the

Federal Circuit:

> Whether, pursuant to 19 U.S.C. § 1641(d)(1)(A), the United States Bureau of
> Customs and Border Protection may issue more than one penalty notice for a
> customs broker's alleged failure to exercise responsible supervision and control
> based upon the customs broker's alleged repeated misclassification of entered
> merchandise over a period of time and on multiple separate entry documents; and
> if so, whether the aggregate penalty sought from those multiple penalty notices
> may exceed $30,000.

Further, this Court stays proceedings in this matter until thirty days after the CAFC renders its

decision on the appeal.  Defendant's application to file a reply brief is granted.  Defendant's

motion for oral argument is denied.

So ordered.


/s/       Gregory W. Carman
Gregory W. Carman


Dated: October 19, 2006.
          New York, New York